Michigan Southern and Northern Indiana Railroad Co. *v.* Day.

---

The Michigan Southern and Northern Indiana Railroad Company, Appellant, *v.* Justin Day, Junior, Appellee.

### APPEAL FROM COOK.

Where a box, shipped at Adrian for Chicago (the usual railroad time of transportation being three days) on the twenty-ninth October, arrived at Chicago on the third of November, and was not delivered by the freight agent until the fifteenth of the latter month, this will be considered so unreasonable a delay as to entitle the owner to damages.

Where the agent of a railroad company for the delivery of freight, authorized to make all necessary arrangements as to the time and place of its delivery, agrees to forward freight by another company, or by a line of boats, if this agreement is neglected, the railroad company will be liable.

Where it is the custom of a railroad company to receive the directions of shippers and owners of goods to be sent beyond the terminus of their road, if directions are given to forward by a particular line, which are not obeyed, the railroad company will be liable.

Michigan Southern and Northern Indiana Railroad Co. *v.* Day.

Shippers and owners of goods have the right to control their destination; and if their directions are obeyed, no responsibility for loss is incurred.

The employment of an agent, by a railroad company, to deliver all freights, necessarily includes the authority to make terms for its delivery at or beyond the terminus of the road.

THIS was an action of assumpsit, alleging a contract to carry a box from Adrian to Chicago, the box containing certain goods of the value of $3,000. There was a second count, same as the first, except that it alleges that the appellant undertook to deliver the goods in Chicago in three days from the date of the receipt for the box. There was a third count, averring a promise to deliver the box in a reasonable time. To this declaration the general issue was pleaded. There was a trial before MANIERRE, Judge, and a jury, and a verdict and judgment for the appellee, for eight hundred and twenty dollars.

N. B. JUDD, and F. WINSTON, for Appellant.

H. B. HURD, for Appellee.

BREESE, J. This is an action of assumpsit, by Day against the M. S. and N. I. Railroad Company, as a common carrier, on a contract, as alleged in the first count of the declaration, to carry a box, containing certain goods and merchandize, from Adrian to Chicago. The second count alleges that the defendant undertook to deliver the goods in three days from the date of their receipt, and in the third count, to deliver in a reasonable time, with breaches assigned.

Trial, and verdict and judgment for the plaintiff, and motion for new trial, which being refused, the evidence was preserved by bill of exceptions, and the case brought here by appeal.

The errors assigned are: first, admiting improper evidence on the part of the plaintiff; second, overruling appellant's objections to the testimony offered by the plaintiff; third, giving the instructions asked by the plaintiff; fourth, refusing and modifying the instructions asked by the defendant; and fifth, overruling the motion for a new trial, and "in every other step taken and opinion rendered from the beginning to the end of the trial."

We may remark here, that the portion of the fifth error assigned, marked by inverted commas, is wanting in that respect to the court, trying the cause, which every member of the bar should show toward it, when complaining of its judgments. It amounts to a wholesale denunciation of the court, and cannot be permitted without the censure and rebuke of this court. It ought to be known, that errors, which are relied on to reverse a

judgment, should be specially assigned, and no general statement, involving censure of the court, can be tolerated.

The second error assigned, is embraced in the first, so that we have to consider only the first, third, fourth, and the unexceptionable portion of the fifth assignment.

. It will not, however, under the view we take of the case, be necessary to consider particularly the errors as they are assigned, inasmuch as on the argument of the cause, one important question only was presented, and urged upon our attention, and that is, " did the railroad company make a proper delivery of the goods ?"

It is urged on the part of the appellant that there was no delay in their delivery, they having been shipped at Adrian on the 29th of October, arriving at Chicago on the 3rd of November, and delivered by the freight agent on the 15th of that month.

We think, considering the distance between the two points, and the time they were received, a delay of twelve days before their delivery, was unreasonable, and would subject the company to damages on that score, if no other. Where, in case for the non-delivery of a parcel in a reasonable time, it appeared that the parcel in question, had been delivered to the defendant, in London, on the 8th of August, addressed to the plaintiff, at Birmingham, where it should have arrived on the 10th, but did not arrive until the 3rd or 4th of September, it was held upon this evidence, that the plaintiff was entitled to recover. *Raphal* v. *Pickford*, 6 Scott New R. 478. But it is said, if the delay was unreasonable, the railroad company is not liable as carrier, but only as warehouseman or factor, and should be declared against as such ; that its contract to carry terminated when the goods reached Chicago, and that the direction by their owner to deliver them to a particular packet line, and the agreement to do so by the agent of the company, is a new contract, which the agent had no authority to make to bind the company ; that so soon as the owner of the goods interposed his directions, the common law liability of the company ceased on the arrival of the goods at Chicago.

On this proposition this controversy depends, and raises the question, " was there a proper delivery of the goods ?"

H. L. Kingsbury states in his testimony, that he, as agent of Day, the owner, delivered a written order to Smith, the freight delivery agent of the company, to deliver the goods at the " Red Bird " packet office, whence they were to be shipped to La Salle ; that Smith made a memorandum of the order in his book, and engaged so to deliver them, and this before it was known that the goods had arrived at Chicago.

Gilbert Roseter states, and so does James Turner, that it was the custom of the appellant to forward goods that were marked to go forward; that in such cases they were delivered by the agents of the company to forwarders, to be sent to their destination, and goods that were directed to merchants in the city, who were known to the company, were delivered to them at their stores. They concur in stating, that Smith was in the habit of taking orders from persons to whom goods were marked, at Chicago, to deliver them at the desired places, to be forwarded.

This was the course of business adopted by this company, and from the testimony we should infer it was their uniform practice.

The appellant seems to be under the impression, that the contract with Smith was to forward the goods, and there being no count in the declaration on such an undertaking, the court should have instructed accordingly.

It will be borne in mind, that the declaration counts upon a contract to carry and deliver the goods, and by the contract the company was bound to deliver them at Chicago, as the owner might direct, if such direction was within the usual course and custom of the business of the company, or within the general custom of roads terminating at Chicago. On this point, we have adverted to the proof, which is quite satisfactory, that Smith was the agent of the company, for the delivery of all freight arriving at Chicago, from their road, and was authorized to make all the necessary arrangements in regard to their delivery, both as to place, and to the manner of their delivery.

It is laid down as an universal principle, that whether the agency be of a special or general nature, that it includes, unless the inference is expressly excluded by other circumstances, all the usual modes and means of accomplishing the ends and objects of the agency. Story on Agency, sec. 85. And if the agency arises by implication from numerous acts done by the agent, with the tacit consent or acquiescence of the principal, it is deemed to be limited to acts of the like nature. Ib., sec. 87. Paley on Agency, 209, 210.

The employment of Smith, therefore, to deliver all freights, necessarily includes the authority to make terms in regard to the delivery—to undertake to deliver them to a particular person, or at a particular place, within the place to which they are directed. Smith acting within his powers, as agent of the company, as he had been in the habit of acting, and as the nature of the business in which he was engaged required he should act, and as the law made it his duty to act, the only remaining question of importance is, are common carriers bound to obey the instructions of the shipper, or owner of the goods, in regard to their delivery?

The undertaking of a common carrier to transport goods to a particular destination, it is said, necessarily includes the duty of delivering them in safety, and his obligation to deliver safely can only be avoided by the act of God or the public enemy. It is not sufficient that the goods be carried safely, but they must, and without any demand upon the carrier, be delivered, and when his responsibility has begun, it continues until there has been a due delivery. Angel on Carriers, sec. 282.

So it is held, sec. 281, if a carrier is instructed by his employer to deliver goods on board of another vessel for a continuance of the transportation, and the goods are lost on board such other vessel, he is not responsible if he has safely placed them on board such other vessel, as, by so doing, his character as common carrier has ceased.

The doctrine pervades the books, that the instructions of the owner or freighter must be obeyed as to the delivery, and if they do obey them in good faith, they are released from liability.

In 8 Cowen R. 223, *Ackley and Gray* v. *Kellogg et al.*, common carriers, who received goods to transport from New York to Troy, and at the latter place transferred them, pursuant to instructions from the bailor, on board a canal boat bound for the north, and the goods were lost by the upsetting of the boat, were held not to be liable, that their character as common carriers ceased at Troy, and that having taken proper care that the goods were safely put on board the canal boat, they were not responsible for the loss. So where the master of a vessel is directed to tranship, or deliver on board another vessel, a delivery on board such other vessel is the termination of the duty of a common carrier. *Van Santwood* v. *St. John*, 6 Hill's R. 158.

The case shows, that the direction of the freighter or owner must be obeyed to the letter, and if obeyed, no responsibility for loss is incurred.

A case running on all fours with this is reported in 18 Eng. L. and Eq. Reports, arising in the Court of Exchequer, 554—557, *Scotthorn* v. *The South Staffordshire Railway Company.* It appeared on the trial of the cause, that the plaintiffs, who had been engineers carrying on business near " Great Bridge " in Staffordshire, having resolved to emigrate to Australia, had purchased a variety of articles necessary for the undertaking, and one of them had come up to London to take his passage by the ship Melbourne. Before doing so, however, he delivered the goods in question, packed, and labeled " Scotthorn & Co., to the East India docks, passenger ship Melbourne, Australia," to his brother-in-law, to be forwarded to London. The goods were

accordingly sent to the Great Bridge station of the South Staffordshire Railway, and one pound paid for their conveyance to London. By the practice of the S. S. Railway, all goods received at that station are forwarded as far as Birmingham by their own line, and for the rest of the journey by the London and North-Western Railway.

Before the goods arrived in London, Scotthorn having found that no berths could be obtained in the Melbourne, called at the Easton station and left with a clerk in the office, a receipt which had been given for the goods, having previously written across it, "Send the boxes, &c., to Scotthorn & Co., engineers, Bell Wharf, Ratcliffe Highway, London. George Scotthorn." The clerk promised that the fresh direction should be obeyed, and on being asked, said that no additional charge would be made. The goods were, however, taken to the Melbourne, carried to Australia, and lost to the plaintiff.

On these facts it was contended by the company that there was no evidence to support the contract in the declaration, and the judge left it with the jury to say whether the clerk at the Easton station had authority from the company to receive the countermand given, and directed them, if they thought he had, to find for the plaintiff; at the same time reserving the right to the defendants to move to enter a non-suit. The jury found for the plaintiff, and defendants having moved for a rule to show cause why a non-suit should not be entered, after argument for and against, the court discharged the rule.

Baron Alderson said, "the whole question is, what was the contract between the parties? And that actually amounts to a question of fact. Now there is abundant evidence to show that the contract was as stated in the declaration, to carry according to the directions of the plaintiffs. It is very true that originally, when the defendants were put in possession of the goods, the orders were to take them to the East India docks; but before their arrival in London, the plaintiffs having changed their intentions, communicated that change to the agent of the defendants in London, who had authority to deliver the goods. The altered directions were, 'Do not send the things to the place marked on the outside of the packages, but transmit them elsewhere.' The question is not, whether the clerk had power to make a new contract on behalf of the defendants; it is enough that he was told not to send them according to the written directions. By some neglect, the instructions were not obeyed; the articles are sent to Australia and lost. Then, have the defendants performed their contract? I think there was ample evidence to go to the jury to show that they have not, and that

the verdict is therefore right." In this view the other Barons, Platt and Martin, concurred.

It being in proof that it was the custom of this company to receive the directions of shippers and owners of goods to be sent beyond Chicago, and to follow those directions, and deliver as directed, if they had delivered the goods to the " Red Bird " packet office, as they had agreed to do, and they had been lost or damaged, the company would not have been liable, except for the delay in delivering. Without any authority whatever, and contrary to the express understanding of the agent, Smith, the goods were delivered to another and different line. There is, therefore, no delivery according to the contract, as the jury have found, and we think correctly.

No objection is perceived to any of the instructions given by the court, coming up, as they do, to the views here expressed.

When the great changes in the course of business, which railroads have introduced, are considered, the importance of well defined rules as to their duties and obligations to the public is so very obvious, that nothing need be said on that head. These modes of conveyance have now nearly all the passenger business, and a large proportion of the freights, and are now so connected with the business and affairs of life as to be indispensable; and whilst the courts will not feel it their duty or right to hold them liable beyond the clear and well defined boundary of a just responsibility, up to that they will be held, and a reasonably strict performance of all their contracts required of them.

Holding as we do, on principle and authority, that a contract to carry is not performed without a delivery, and that the responsibility of carriers does not cease until there is a delivery, and that they are bound to obey the directions of shippers and owners of freight as to its delivery, within the limits we have prescribed, we can see no ground for disturbing the judgment in this case, and accordingly affirm the same.

*Judgment affirmed.*