SHARP AND McBRIDE, Respondents, *v.* S. H. H. CLARK et al., Receivers of the Union Pacific Ry. Company, Appellants.

CARRIERS—STOCK SHIPMENTS—CONSTRUCTION OF CONTRACT—PAROL EVIDENCE.

The defendant, a railroad corporation, entered into a written contract to transport plaintiffs' sheep from Milford, Utah, to Chicago. There was also a written contract, made at the same time, for the transportation of plaintiffs' servant to care for the sheep. The passenger ticket was to Omaha and Council Bluffs, but defendant carried the sheep by another route, and thus prevented plaintiffs from having an opportunity to dispose of the sheep at Omaha. *Held* that, though the separate papers for the transportation of the sheep did not name the particular route, yet the transportation ticket named Council Bluffs, and, by necessary inference, an intention to carry the sheep through or to the same place; and it was competent for the plaintiff to show by oral proof a usage on the part of defendant of permitting shippers to take sheep from the train and sell en route, and to prove orally a conversation by plaintiffs with the station agent of the defendant, and the former's expressed intention to sell when the sheep reached Omaha, since the law of carriers permitted the shipper to withdraw his sheep at any point on the route, by the payment of freight to the point designated in the contract, and since, also, the evidence was not repugnant or contrary to the written contract. It was further competent, under the contract, to prove by parol evidence a usage between the parties to pay and collect freight for the distance the stock is actually carried, where such usage was not contrary to law, and did not contradict or change the express provisions of the contract.

(No. 689.   Decided June 26, 1896.   45 P. R. 566.)

Appeal from the district court of the First judicial district, Territory of Utah. Hon. H. W. Smith, *Judge.*

Action on a contract by John C. Sharp and Charles McBride, partners, against S H. H. Clark and others, receivers of the Union Pacific Railway Company. From a judgment for plaintiffs, defendants appeal. *Affirmed.*

This action was brought to recover damages in consequence of the failure of the defendants to carry 3,729 sheep, upon the Union Pacific Railway, from Milford, Utah, to the city of Omaha, Neb. The plaintiff's sheep were received by the defendants in 21 cars of the company at Milford, under a bill of lading or contract containing the following provisions, with others which it is unnecesary, for the purposes of this case, to state:

"Live-Stock Contract. Milford, Utah, Station, Oct. 14, 1893. This agreement, entered into, on the day above stated, between the company controlling and operating the line at and from said station, and F. M. Lyman, witnesseth, that the said company has this day received from the said F. M. Lyman —— cars of sheep, to be transported from Milford, Utah, to Chicago, at the rate of —— per car (which is less than the tariff rate for the transportation of live stock, and is given said shipper in part consideration of his agreement to the limitation of the liability of said company as a common carrier, as herein set forth), upon the terms and conditions following, which are accepted by the shipper as just and reasonable. * * * The said shipper agrees to load, unload, and reload all said stock at his own expense and risk, and to feed, water, and attend the same at his own expense and risk, while it is in the stock yards of the said company awaiting shipment, and while on the cars or boats, or at feeding or transfer points, or where the same may be unloaded for any purpose. The said shipper

himself assumes the duty of properly and securely placing all the said stock in cars,—when to be shipped thereon,—and of keeping such cars securely locked and fastened so as to prevent escape of such stock therefrom. In case the said company shall furnish any labor or laborers to assist in loading or unloading said stock at any point, no additional charge shall be made therefor, and such laborer or laborers shall, while so engaged, be deemed as exclusively the employés of said shipper, and the said company shall not be liable for anything done, or omitted to be done, by such laborer or laborers while so engaged. * * * The said company shall not be liable for the nondelivery or loss of, nor for injuries suffered by any of said stock beyond its own line. * * * It is expressly agreed and understood that whereas, the line of said company is operated, in connection with the lines of a number of other companies, as the Union Pacific System, therefore this contract, in all its terms, is binding upon, and shall inure to the benefit of, all such companies so operated upon or along the line of, which the property hereinbefore described is to be transported under and by virtue of the terms of this contract, and the terms, conditions, and limitations hereby imposed shall inure to the benefit of each and every carrier beyond the route of this company to whom the said property may come for the purpose of transportation to destination. * * * The signing of this contract by the shipper or his agent shall be conclusive evidence of knowledge, assent, and agreement to each and every stipulation and condition thereof by said shipper. * * * "

Exhibit J W P. No. 2:

"Issued by railway company as per stamp on back, operated as part of Union Pacific System. Going stock ticket. Oct. 14, 1893. Good only for continuous passage

from Milford, Utah, to Council Bluffs, of F. M. Lyman, who is actually in charge of and accompanying a ship-ment of live stock between these stations. Good only with car No. 1727, 515. Void after Oct. 30, 1893. Not valid unless countersigned by freight agent at Milford, Utah. Issued subject to conditions on back. This ticket will not be honored for passage unless signed on back by person in whose favor it is issued. No stop over al-lowed. Form L275½. E. L. Lomax, General Passenger and Ticket Agent. Countersigned: M. J. Edgeworth, Agent, Milford, Utah."

Reverse:

"Contract: In consideration of the special contract under which this ticket is issued, it is hereby understood and agreed by the holder that: This ticket is not issued to the holder thereof as a passenger, but it is issued, at his special instance and request, in order to enable him to accompany a stock shipment on a freight or stock train, in order to care for the stock en route. * * * This ticket is issued with the consent and by the authority of all the railway companies owning, controlling, using, and operating the line or lines over which the same may be used; and it is hereby agreed that all the terms and conditions of this contract shall inure to the benefit of all of the said companies, and are binding between the holder hereof and any one and all of same.

"Rules and Regulations for the Transportation of Live Stock. * * * At the above classification, the com-pany receiving the stock assumes the liability, not ex-ceeding the amounts given below, for loss or damage which may occur to them through the fault or negligence of its officers, agents, or employés while in transportation over its road. A shipment, upon these conditions, of one or more cars of stock, will entitle the owner or men in

13 UTAH—33

charge to free transportation, as provided for in circulars issued by the general freight department. Persons not accompanying stock on the same train or boat, but preceding or following after, or on other trains or boats, will not be passed, but charged regular fare; nor will the money be refunded or passes given for fares thus paid. The agent at the station where the stock is loaded will issue special tickets to men in charge of stock, who are entitled to pass free, which tickets must be filled out in accordance with instructions from the general ticket office, and signed by the passenger, and the passenger's name must also be entered upon the back of this contract. Such tickets will be honored only when presented with this contract, and upon the train conveying the car or cars or boat carrying the number of head of stock named in the ticket. Agents will refuse to enter any name on contract but those of owner or employé in charge, without regard to pass guaranteed by number of cars."

It appears that the sheep so received were hauled by the defendants, on the Union Pacific Railway, to Fremont, Neb., a point 49 miles west of Omaha and Council Bluffs, and from that place, by the Fremont, Elkhorn & Missouri Valley Railroad Company and the Chicago & Northwestern Railroad Company—passing 25 miles north of Council Bluffs and Omaha—to Chicago, Ill. The distance by this line from Fremont to Chicago was 34 miles shorter than the route by way of Omaha and Council Bluffs, and the delay was usually less than by way of Omaha. The plaintiffs testified that the shipment was made in October, 1893, and that they had been shipping over the Union Pacific Line a good many times,—three times during that year. Plaintiff Sharp was asked: Q. Do you know what the custom was, if you wanted to go clear through to a point,—if you wanted to go to Omaha,

—whether you could bill them on to Chicago? A. Yes, sir. Q. What was the custom—what was the usage— of the railroad? (Objected to by defendants as irrelevant and immaterial, and inconsistent with the terms of the contract which was entered into at the time. The court overruled the objection, to which counsel for the defendants excepted.) Q. Do you know what the custom was as to being allowed to stop over on the road? A. Yes, sir. Q. What was the custom? (Counsel for the defendants renewed the objection before made, and on the ground that it tended to vary the written contract introduced in evidence. Objection overruled, and exception taken by counsel for defense.) A. The custom was that we could feed and unload wherever we wished to; could sell any place on the road that we wished to. Q. And have them unloaded at the point of the sale? A. Yes, sir. That is what you mean by selling wherever you wished to? A. Yes, sir; we always stopped at Omaha, and tried to sell there before we went on. Q. Did you sometimes sell there? A. Yes, sir. Q. At the time these contracts were made out, you may state whether or not you told or informed the agent, Edgeworth, of your desire to stop at Omaha, or not? (Objected to as irrelevant, immaterial, and incompetent. Objection overruled, and exception taken by defense.) A. Yes, sir. Q. What did you tell him? A. I told him that I expected a train load would be sold in Omaha; we had partly made a contract for the sale of that train load of sheep. Q. What was the usage about this matter of stopping over and billing through? (Objected to by defendants as irrelevant, incompetent, and intended to vary the written contract of shipment in this case. Objection overruled by the court, and exception taken by counsel for the defense.) A. The usage was that, when we load sheep at any point, that it bills them clear

through to Chicago, with the privilege of unloading, feeding, and selling at any other point that we may choose. This I have done often on that road, sometimes not reaching so far as Omaha, and making the sale even before reaching Omaha. And we are charged up, of course, with the freight to that point; and we do this in order that we may have the benefit of the other route, because, if we only bill to Omaha, and don't sell there, and have to go on, then we have to pay the local rate from there to Chicago; and it is always understood—by me at least, and the railroad company—that, in order to have the benefit of this other rate, that we bill through, then we are charged the rate at the point we sell." Witness further said that if they sold at Omaha the usage was to pay the rate to that place only.

*Williams, VanCott & Sutherland,* for appellants.

Cited: Hutchinson on Carriers (2d Ed.) sec. 126-128; *The Delaware,* 14 Wall. 600; *Grace* v. *American Ins. Co.,* 109 U. S. 283; *White* v. *Ashton,* 51 N. Y. 280; *Hinkley* v. *New York Central, etc., Ry. Co.,* 56 N. Y. 429.

In this case, an examination of the abstract will show by evidence free from conflict that the bills of lading secured transportation for the sheep either by way of Omaha and Council Bluffs or by Elkhorn and Missouri Valley, and that the latter was the shorter and quicker route. The bills of lading themselves are silent as to which of these two routes should be taken in transporting the property. Such being the case, any oral agreement, demand or direction to take them by one or the other cannot be shown in evidence without violating the rule referred to.

*Brown, Henderson & King,* for respondents.

Plaintiff is entitled to show the oral directions of themselves and the agent of defendants at the time of the shipment. *Mobile & M. R. Co.* v. *Jurey,* 111 U. S. 591; *Shelton* v. *Merchants' Dis. Co.,* 59 N. Y. 258; *Blodgett v. Abbott,* 72 Wis. 517; *Mo. Pac. R. Co.* v. *Hall,* 66 Fed. 869.

A contract may exist partly in parol and partly in writing. The contract of shipment and bill of lading were but a statement and a contract upon the matters therein contained. The contract of allowing the plaintiffs to stop their sheep and sell at Omaha was a distinct and different one from the written contract. There was nothing contradictory to the written contract in proving the verbal one and it was competent evidence. *Mobile* v. *Jurey,* 111 U. S. 591; *Shelton* v. *Merchants' Dis. Co.,* 59 N. Y. 258; *Blodgett* v. *Abbott,* 72 Wis. 517; *Chapin* v. *Dobson,* 78 N. Y. 79; *Brent* v. *Bank,* 1 Peters 89; 2 Wharton Ev. 105.

The usage of defendants in allowing stock to be sold in transit and stopped at any point for sale, may be proven when the contract is silent upon that subject. *San Antonio* v. *Barnett,* 27 S. W. R. 676; *Galveston R. Co.* v. *Kinnebrew,* 27 S. W. R. 631; *Missouri Pacific* v. *Hall,* 66 Fed. 868; *Atkinson* v. *Truesdale,* 127 N. Y. 230; *Shelton* v. *Merchants' Dis. Co.,* 59 N. Y. 258; 2 Wharton on Evidence, sec. 969; *Eldredge* v. *Smith,* 13 Allen 140-143; *Fabbri* v. *Phœnix Ins. Co.,* 55 N. Y. 133; *Russell* v. *N. H. St. Co.,* 50 N. Y. 121; *Robertson* v. *N. S. Co.,* 139 N. Y. 420.

ZANE, C. J.:

It appears that the defendants received of the plaintiffs at Milford, Utah, 3,500 sheep, and transported them over the Union Pacific Railway to Fremont, Neb., and from that point, by arrangement with other roads, to Chicago, Ill. The defendants claim that they were

authorized to carry them by the above route to Chicago, under their shipping contract with the plaintiffs. On the other hand, the plaintiffs insist that the same contract required the defendants to carry their stock to Omaha, and to permit them to unload and sell the same, if they desired. These conflicting claims render it necessary to ascertain the legal effect of the contract in the respects involved by this contention.

The contract acknowledges the receipt of the stock, and that it was to be transported from Milford to Chicago. The plaintiffs agreed to land, unload, reload, feed, water, and attend to the stock, at their own expense and risk, while on the cars, or at feeding or transfer points, or where the stock might be unloaded for any purpose. And it was agreed that the defendants would not be liable for loss or injury to the same beyond their own lines, constituting the Union Pacific System. At the time the contract was delivered, tickets were given by the defendants to the men in actual charge of the sheep, to enable them to accompany and attend to them, good only for continuous passage from Milford, Utah, to Council Bluffs. It was also stipulated that the tickets would be honored only when presented with the contract, and upon the train conveying the stock. The bill of lading or contract for the transportation of the sheep, and the tickets or contract for the passage of the men in charge of them, were made between the same parties, and delivered on the same day. The purpose of the plaintiffs was to secure the transportation of their sheep, and the object of the defendants was the benefit of the freight charges for their transportation; and this freight was the only consideration paid and received for the transportation of the sheep, and the men in charge of them. The "live-stock contract," as it is termed, the tickets, and the conditions on the back of them, and the rules and regulations for

transportation in evidence, were all parts of the same contract.

The rule applicable to such a case has been stated thus: "The contract may be contained in several instruments, which, if made at the same time, between the same parties, and in relation to the same subject, will be held to constitute but one contract." 2 Pars. Cont. (8th Ed.) p. 503; *Railroad Co.* v. *Curran*, 19 Ohio St. 1. The defendants' line of railway extended to Council Bluffs, and connected there with the Chicago & Northwestern, with which it had shipping arrangements to Chicago. Defendant's line also connected with the road of another company at Fremont, 49 miles west of Council Bluffs, which connected with another line, and that with still another line extending to Chicago. The separate papers for the transportation of the sheep did not name the particular route, while the tickets for the transportation of the shepherds in charge of the sheep passed them only to Council Bluffs. The contract and tickets, when considered together, show an express intention to transport the men in charge of the stock to Council Bluffs, and, by necessary inference, an intention to carry the sheep through or to the same place. If the defendants had carried the stock to Omaha, the plaintiffs would have had the legal right, when they reached that place, to require their delivery to them for sale or other disposition. It is true that the defendants could have demanded the freight to Chicago, unless there was a valid agreement or usage authorizing payment to Omaha simply. "A carrier is employed as bailee of a person's goods, for the purpose of obeying his directions respecting them, and the owner is entitled to receive them back at any period of the journey, when they can be got at. To say that a carrier is bound to deliver goods according to the owner's first direction is a proposition wholly unsupported either by law or com-

mon sense." Hutch. Carr. (2d Ed.) § 337; *Railway Co. v. Barnett* (Tex. Civ. App.) 27 S. W. 677. The law did not require the plaintiffs to tender at Fremont the freight charges to Chicago. If the sheep had been carried to Omaha, the defendants could not have been compelled to deliver them to the plaintiffs without the tender of the freight charges to Chicago, or an agreement to deliver them without freight beyond Omaha, or a valid usage to pay only to the point of delivery to the owner.

The plaintiff Sharp was permitted to testify, against the objections of the defendants, that he told their agent at Milford, before he made out the bills of lading, that they wanted the sheep stopped at Omaha, that they expected they would be sold there, and that a contract for their sale was being negotiated. To this ruling of the court the defendants excepted, and assign the same as error. In view of the right of the plaintiffs, under the contract, to demand their stock at Omaha, and the obligation of the defendants to deliver it upon payment of the freight charges, this usage could not vary the contract in any respect. We find no error in the admission of such testimony.

The plaintiffs were permitted to testify, against the objections of the defendants, that they had shipped sheep over the Union Pacific Railway a number of times, and the usage was to bill them through to Chicago, and that they were allowed to unload and sell at any place; that they had often done so on that road,—sometimes taking them off and selling west of Omaha,—and the usage was to pay freight charges to the place of unloading. To this ruling of the court the defendants excepted, and assign the same as error. The usage proven, so far as it related to the right to take the stock off the train, was identical with the law. We are disposed to hold that proof of a usage between the parties to pay and collect

freight for the distance the stock is actually carried was competent, under the contract in evidence. Such a usage was not contrary to law, and did not contradict or change the express provisions of the contract. If the contract had provided expressly that freight should be paid to the place mentioned in the bill of lading, though unloaded at an intermediate point, the usage would have been contrary to it and void. The usage proven was not contrary to the positive provisions of the contract. "Parol evidence is competent to annex to a contract a custom or usage of the business and locality, known to the parties, or so general and well settled as to be presumed to be known to them, and with reference to which they must be deemed to have contracted." Browne, Par. Ev. pp. 216, 227; *Lowry* v. *Russell*, 8 Pick. 360. Parol proof is sometimes competent to annex to a contract a usage, when such usage does not conflict with the express terms of the contract; in other cases, proof is admitted to explain expressions used in the writing; in others, such proof is allowed, to remove latent ambiguities; and, in other cases, proof of former dealings between the parties is admissible to show acquiescence therein. *Railroad Co.* v. *Johnston*, 51 Am. Rep. 489; *Robinson* v. *U. S.*, 13 Wall. 363; 27 Am. & Eng. Enc. Law, 816; *Bliven* v. *Screw Co.*, 23 How. 420; *Andrews* v. *Roach*, 37 Am. Dec. 718; *McClure* v. *Cox*, 70 Am. Dec. 552.

The court below charged the jurors that the defendants had the right to collect freight to Chicago though the stock might not be carried that far, and that they should disallow the item paid by plaintiffs for freight between Omaha and Chicago. In view of this instruction, and the amount of the verdict, it is not at all probable that the proof of usage prejudiced the plaintiff, and therefore its admission would not have been reversible

error, though it had been erroneous. We find no reversible error in this record. Judgment affirmed.

BARTCH and MINER, JJ., concur.