TEXAS MIDLAND R. R. v. HARGROVE.
(No. 7181.)

(Court of Civil Appeals of Texas. Dallas. July 4, 1914. Rehearing Denied Oct. 17, 1914.)

1. CARRIERS (§ 68*)—CUSTODY AND CONTROL OF GOODS—RIGHTS OF CONSIGNOR—CHANGE OF DESTINATION.

A consignor of goods which had been loaded, and for which a bill of lading had been issued to his agent as consignee, before any new interest had intervened, and subject to the carrier's claim for full freight, had the right to cancel the contract of shipment, and to require a redelivery at the point of shipment, or at any reasonable point short of the original destination, if it could be made without too great expense or inconvenience to the carrier.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 148, 194, 207–209, 216; Dec. Dig. § 68.*]

2. CARRIERS (§ 94*)—REFUSAL TO REDELIVER GOODS—CONSIGNOR—ACTION FOR DAMAGES.

A consignor whose goods had been loaded and for which a bill of lading had been issued to his agent as consignee, on the carrier's refusal to redeliver them at the place of shipment where train on which they were loaded was just about to leave, was entitled to recover the difference, if any, between their market value there and when they were delivered at destination.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 367–395, 456; Dec. Dig. § 94.*]

3. CARRIERS (§ 94*)—REFUSAL TO REDELIVER—ACTION FOR DAMAGES—TENDER OF BILL OF LADING.

Petition, alleging the ownership of goods shipped and loaded, that demand was made upon the carrier for a cancellation of the shipping directions, and for a redelivery before they left the point of shipment, without alleging that when such demand was made the consignor tendered the bill of lading and offered to pay the freight, stated a good cause of action for damages.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 367–395, 456; Dec. Dig. § 94.*]

4. CARRIERS (§ 94*)—REFUSAL TO REDELIVER—ACTION FOR DAMAGES—TENDER OF BILL OF LADING.

Where a carrier's agent, when requested by the shipper of goods, to whose agent it had issued a bill of lading, to redeliver them to the consignor, said he could not do so because the train had left, when in fact it was in the yards, as he knew, and that a certain station was the only place at which they could be put out, if at all, and that he did not believe they could be put out there, and did not demand the bill of lading nor deny the consignor's ownership, the failure to tender the bill of lading was immaterial to the consignor's right of action for damages.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 367–395, 456; Dec. Dig. § 94.*]

5. APPEAL AND ERROR (§ 1071*)—HARMLESS ERROR—IMMATERIAL FINDING.

In an action for damages for a refusal to redeliver a shipment of goods, where the bill of lading was in the possession of the shipper's agent, and it was not shown what would have been done had the shipment been halted, a finding that he would have surrendered the bill of lading, even if based only on presumption and not supported by the evidence, was harmless error, where the offer to surrender the bill of lading was immaterial to the right to recover.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4234–4239; Dec. Dig. § 1071.*]

Appeal from District Court, Delta County; Wm. Pierson, Judge.

Action by J. W. Hargrove, Jr., against the Texas Midland Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Henry C. Coke and S. W. Marshall, both of Dallas, and Dashiell & Coon, of Terrell, for appellant. Newman Phillips, and Bennett & Lane, all of Cooper, for appellee.

RASBURY, J. Appellee sued appellant for $1,016.06, alleged to be the difference in the market value at Cooper, Tex., on March 25, 1913, of a shipment of 118 bales of cotton consigned by appellee to W. D. Cleveland & Son at Houston, and delivered to appellant for transportation, and its market value at Houston, a month later, when delivered there by appellant. The right to recover the difference in market value was based upon the refusal of appellant, after the cotton was loaded upon its cars attached to a train at Cooper, Tex., and but a few minutes before its departure, to agree to stop the shipment that it might be unloaded and delivered to a local purchaser who had bought same, if that arrangement could be made. Trial was without jury, and judgment was for the appellee, from which this appeal is prosecuted. The trial judge, on request of appellant, prepared and filed the following conclusions of fact, which we adopt except as hereinafter stated:

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

"I find: That on March 24, 1913, the plaintiff was the owner of 118 bales of cotton, and that on that date he delivered the same to the Texas Midland Railroad at Cooper, Tex., for shipment to Houston, Tex. That on said date the Texas Midland Railroad issued to the plaintiff a bill of lading covering the 118 bales of cotton, showing the destination of the cotton to be Houston, Tex. That at the direction of the plaintiff the said cotton was consigned to the order of the First National Bank of Cooper, Tex., and the bill of lading so provided, and that this was done for the convenience of the plaintiff and the bank's connection with the cotton was for and as agent for the plaintiff. The bill of lading mentioned above was by the plaintiff, immediately after its issuance, delivered to the First National Bank of Cooper. That the 118 bales of cotton was not shipped from Cooper until two or three days after the issuance of the bill of lading mentioned above and at the time it was shipped from Cooper it had a market value at Cooper of $7,836.80.

"I find that two or three days after the cotton was delivered to the Texas Midland Railroad, the said railroad shipped the cotton from Cooper and started it on its journey to Houston, Tex., and that after some days it reached Houston, Tex., and at plaintiff's direction was sold by W. D. Cleveland & Sons. That when the cotton reached Houston, Tex., it had a market value in Houston of $6,954.51.

"I find that on the day that the Texas Midland Railroad shipped the cotton from Cooper, and before it left Cooper, the plaintiff sold the cotton to J. T. Rountree for $7,836.80, on condition that the cotton could be delivered to Rountree at Cooper by the plaintiff on that day.

"I find that after the sale had been agreed to with Rountree, and for the purpose of having the cotton left at Cooper, R. M. Walker, cashier of the First National Bank of Cooper, who had the bill of lading and, acting for plaintiff, called the agent of the Texas Midland Railroad at Cooper by telephone and told the agent that the cotton was sold, provided it could be left at Cooper, and requested the agent not to ship it out in case it had not already gone, and that the said agent informed Walker that the cotton had already gone, and was at the time of the conversation several miles out of Cooper.

"I find that in fact that at the time Walker had the conversation with the agent of the railroad mentioned above that the cotton had not been shipped from Cooper, but was at that time loaded, and the train which later carried the cotton was, at time of said conversation, standing on the tracks within a few feet of the railroad's office in Cooper, Tex., and that this fact was known to defendant's agent at that time or by the use of ordinary care said agent could have known said fact.

"I find that if the agent of the railroad at Cooper had used ordinary care to have the cotton left at Cooper, after he received the communication from Walker, that he could have had the cotton left at Cooper, but that I also find that the agent used no care whatever to have the cotton left at Cooper, and that a few minutes after the conversation with Walker the train containing the cotton left Cooper, and the cotton was carried to Houston.

"I find that the difference between what plaintiff would have received from Rountree had the cotton not been shipped from Cooper and what he did receive for the cotton after it was sent to Houston and sold there to be $882.20.

"I find that when R. M. Walker had the conversation with the agent of the railroad at Cooper about not shipping the cotton that the agent did not request the bill of lading to be returned to the railroad, but that Walker had the bill of lading, and would have returned it to the railroad had the cotton been left at Cooper."

[1] The controlling question raised by appellant is the right of appellee as consignor of the cotton to countermand or cancel the contract of shipment after issuance of bill of lading and after the cotton was loaded on cars attached to a train about to move on its journey, or, in short, in the custody of appellant en route to destination, and we shall discuss that issue first in order that all other issues may be discussed in the light of our conclusions in that respect. An eminent and accepted authority says:

"So long as the goods remain the property of the bailor he may countermand any directions he may have given as to their consignment, and may, at any time during the transit, require of the carrier their redelivery to himself; and if such redelivery can be made without too much inconvenience or expense to the carrier, he will be bound to make it." Hutchinson, Carriers, § 660.

In support of the text the author cites Scothorn v. South Staffordshire Railroad Co., 8 Exch. 341, and quotes approvingly from that case that:

"A carrier is employed as bailee of a person's goods for the purpose of obeying his directions respecting them, and the owner is entitled to receive them back at any period of the journey when they can be got at. To say that a carrier is bound to deliver goods according to the owner's first directions is a proposition wholly unsupported either by law or common sense. I can well understand the case of goods being placed in such a condition that they cannot easily be got at, though it is usually otherwise."

Continuing, the author says:

"So, clearly, the owner would have the right, while no new interests have intervened, and subject to the carrier's claim for full freight, to intercept the goods upon their journey, and demand their delivery at any reasonable point upon the carrier's line short of the original destination." Hutchinson, Carriers, § 661.

This doctrine is recognized by a number of adjudicated cases, and is both fair and equitable, since it contemplates the payment of full freight when the contract of shipment is prevented by the direction of the consignor owner. San Antonio & A. P. Ry. Co. v. Barnett, 27 S. W. 676; Mich. South. & North Ind. R. R. Co. v. Justin Day, 20 Ill. 375, 71 Am. Dec. 278; Sharp et al. v. Clark et al., 13 Utah, 510, 45 Pac. 566; Ryan v. Great Northern Ry. Co., 90 Minn. 12, 95 N. W. 758.

[2] In the instant case it appears from the findings of fact by the trial judge, and supported by appellee's witnesses, and not substantially disputed by any witness for appellant, that the cotton was loaded on cars standing on appellant's track in close proximity to the office of appellant's agent when he was requested to cancel the contract of shipment and redeliver the cotton to appellee at Cooper, where it was loaded, but that the agent, when requested to halt the shipment, in effect advised appellee that the train had departed and the cotton at that time was between two stations south of Cooper, and which statement, according to the agent's admission, was incorrect, and in legal contemplation a refusal to redeliver, and entitled appellee to recover the difference, if any, between the market value of the cotton in Coop-

er at that time and its market value in Houston, when delivered there by appellant.

[3] But it is here urged by appellant that the court below should have sustained its general demurrer to appellee's petition because same failed to show that at the time the request was made to halt the shipment appellee tendered to appellant the bill of lading and offered to pay the freight, etc. In respect to such matters the rule is, as we have said, that full freight may be demanded, and we think that the bill of lading must, as matter of course, be returned before redelivery, if the carrier demands it; but we also think it equally clear that an allegation of ownership, coupled with the further allegation that demand was made upon appellant for cancellation of the directions to ship or a redelivery, is sufficient against a general demurrer, since such facts, under the circumstances, state a good cause of action. The petition alleged ownership of the cotton, possession by appellant, and a demand for its redelivery, while yet in appellant's custody in its yards, and a refusal by appellant. It is conceivable that a failure to produce bill of lading would not, in every case, justify the carrier, if other proper assurances and evidence of title are furnished, in refusing to halt the movement of the freight, and as relates to the payment of freight, it occurs to us that failure to tender same will not preclude the right to recover in such cases, since the carrier can at all times protect itself by refusing actual delivery of the goods until payment thereof, whether at point of destination provided for by the bill of lading or at point where the shipment was arrested. Such facts are matters of defense rather than conditions controlling a plaintiff's right of recovery in such cases.

Assignments 3, 4, 5, 6, 7, 8, and 9 attack either the findings of fact by the trial judge, or the sufficiency of the evidence to support the judgment. We have carefully examined the entire record of the evidence, and have concluded that same fairly and sufficiently supports the judgment and all the findings of the court brought into review by the assignments of error, save the facts covered by assignments 4 and 9.

[4] By the fourth assignment it is urged that the judgment is improper because no tender in fact of the bill of lading was made. It is a fact that no tender of the bill of lading was made, but under the facts found by the judge and supported by the evidence, that fact was immaterial. As we have said, when first requested to halt the shipment the agent advised appellee that he could not do so for the reason that the train had departed and was at that time probably between two stations south of Cooper. As a matter of fact it was actually in the yards when the request was made, and it is fairly deducible from the evidence that the agent knew it. Subsequently, and but a short while after the train actually departed, another request was made that the cotton be set out at either Klondyke or Commerce, stations south of Cooper, but the agent replied that Ennis was the only place it could be set out, if it could be set out at all, and that he did not believe it could. Such attitude, it occurs to us, constituted a refusal by the agent to halt the shipment and in the absence of any demand for the bill of lading, or any denial of appellee's ownership of the cotton, the failure to present the bill of lading became an immaterial matter.

[5] The ninth assignment asserts that the finding of the court that appellee would have surrendered the bill of lading had the shipment been halted is not supported by the evidence. The facts show that the bill of lading was in the possession of appellee's agent, but it does not show what would have been done had the shipment been halted, and hence it may be said the court's finding was based upon presumption. Conceding, however, all that is claimed, such finding does not constitute reversible error, since the actual tender of the bill under the recited facts was, as we have said, immaterial to appellee's right to recover.

The judgment is affirmed.