# Virginia & S. W. R. Co. *v.* R. H. Sutherland.

## (*Knoxville*. September Term, 1917.)

1. **CARRIERS. Bill of lading. Diverting shipment.**

Where cattle are billed to one point, but directions are given to deliver at an intermediate point, and they are carried on to the point billed to, the shipper is entitled to damages occasioned thereby; a shipper having the right to divert a shipment, in a reasonable manner, at any point. (*Post, p.* 268.)

Cases cited and approved: Michigan Southern, etc., R. Co. v. Day, 20 Ill., 375; Loveland v. Burke, 120 Mass., 139.

Cases cited and distinguished: Sharp v. Clark, 13 Utah, 510; Steidl v. Minneapolis & St. L. R. Co., 94 Miss., 233.

2. **EVIDENCE. Contract of shipment. Parol evidence.**

A shipper's right to divert a shipment at an intermediate point is by law implied in the shipment contract, and proof of directions to deliver at an intermediate point is not a variation of the terms of a written contract by parol evidence. (*Post, p.* 270.)

Cases cited and distinguished: London, etc., R. Co. v. Bartlett, 7 H. & N. 400.

3. **APPEAL AND ERROR. Saving objections. Assignments of errors.**

Errors not assigned in the court of civil appeals cannot be assigned in the supreme court. (*Post, p.* 271.)

---

FROM JOHNSON.

---

Appeal from the Circuit Court of Johnson County. —Dana Harmon, Judge.

HARR & BURROW and DONNELLY & DONNELLY, for plaintiff.

BUTLER & DONNELLY, for defendant.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

Sutherland, the appellee, is a dealer in cattle. Desiring to ship a load of cattle to the eastern market, he delivered same to defendant company at Shoun, a station in Johnson county, and billed them to "M. H. Grube & Co., Philadelphia, Pa.," and caused to be written on the face of the bill of lading by the company's agent the words: "Off at Lancaster for feed and water." In fact M. H. Grube & Co. were engaged in the cattle business at Lancaster, Pa., not Philadelphia. The shipper directed a delivery of the cattle to this firm at Lancaster, an intermediate point on the route, which was in fact the intended market. The purpose of the shipper was to have the cattle unloaded at Lancaster, where they were to be sold by Grube & Co., and the trip continued for such of the cattle as were fit for the Philadelphia market. Eighteen of the thirty-three animals were "feeders," for which there was no market in Philadelphia. Instead of stopping the cattle at Lancaster the load was taken through to Philadelphia, where a quarantine was in force. By reason of the existence of the quarantine, the cattle could not be returned to Lancaster, and they were forced to sale on the Philadelphia market, bringing materially less

than they would have brought at Lancaster. Grube & Co. were to receive the cattle on consignment, and not as purchasers.

For fifteen years Sutherland had made shipments and sales in this manner, and this was the first instance of a failure to make delivery to the consignees at Lancaster; there was never any question concerning same raised by the railway company at the time.

The action is for a recovery of the difference in the market values at the two places, and both the circuit judge and the court of civil appeals have sustained Sutherland's suit. The railway company asks at our hands a reversal of the judgment.

One of the errors assigned by the railway company is that as the contract of shipment called for a terminal delivery at Philadelphia, and that since the cattle were transported to and delivered at that place, there can be no recovery for a failure to deliver at Lancaster. Direction by the shipper for a Lancaster delivery having been given, the law does not support this contention of the carrier.

The shipper or owner does not renounce his right of all control over the goods by a delivery of same to a common carrier. The latter stands in the relation of one employed as bailee of the goods for the purpose of obeying such instructions of the true owner regarding them, and the owner has the right to have the goods stopped or diverted at any intermediate point through which they are to pass to the destination named in

the bill of lading. It is not true, as urged by the carrier in this case, that it was only bound to deliver the cattle according to the owner's first directions or according to a recitation in the bill of lading as to final destination. This right of the owner to stop or divert must, of course, be exercised in a reasonable manner. *Michigan Southern, etc., R. Co.* v. *Day,* 20 Ill., 375, 71 Am. Dec., 278; *Loveland* v. *Burke,* 120 Mass., 139, 21 Am. Rep., 507; 10 Corp. Juris, 84; 4 R. C. L., 334.

This rule found application in *Sharp* v. *Clark,* 13 Utah, 510, 45 Pac., 566, where an action was brought to recover damages suffered in consequence of the defendants' failure to carry a shipment of sheep through Omaha. The destination of the stock was recited to be Chicago. The passenger ticket for the person accompanying the shipment was routed through Omaha but, the shipment was carried by another route so that plaintiffs had no opportunity to sell the sheep at Omaha. In allowing a recovery, the court said:

"If the defendants had carried the stock to Omaha, the plaintiffs would have had the legal right, when they reached that place, to require their delivery to them for sale or other disposition. It is true that the defendants could have demanded payment of the freight to Chicago unless there was a valid agreement or usage authorizing payment to Omaha simply."

In *Steidl* v. *Minneapolis & St. L. R. Co.,* 94 Minn., 233, 102 N. W., 701, where an action was brought by the shipper to recover the difference between the price

of potatoes which he would have received, had they been shipped by the carrier over the route agreed upon subsequently to the original shipment and sold by the shipper at an intermediate station on that route, and what they in fact sold for upon the other line. In passing upon the right to divert the goods, the court said, touching the right to damages: .

"It is well settled that the owner of goods delivered to a common carrier for shipment may intercept them on their journey, and demand the delivery thereof to him at any reasonable point on the carrier's line short of the original destination, upon payment of the transportation charges, and surrendering, or offering to surrender, the bill of lading for cancellation. . . .

"This right plaintiff possessed in the case at bar, and if the car had been sent over defendant's line to Angus he could have intercepted at any station, claimed his potatoes, and sold them; and if a valid agreement was made by the parties to so forward them, it was violated by defendant, and plaintiff is entitled to recover the damages sustained by him in consequence of the violation.

It is next assigned as error that parol proof was not competent to show that Lancaster, and not Philadelphia named in the contract, was to be the point of delivery. This insistence overlooks the fact that the owner's right to direct and receive a delivery at an intermediate point is by law implied in the shipment contract, as a part of it. There is, then, no variation of the terms of the contract by parol evidence.

In *London, etc., R. Co.* v. *Bartlett,* 7 H. & N., 400, 158 Eng. Reprint, 529, 23 Eng. Rul. Cas., 424, it was said by POLLOCK, C. J.:

"It is clear that a consignee may receive the goods at any stage of the journey; and though the consignor directs the carrier to deliver them at a particular place, there is no contract by the carrier to deliver them at that place and not elsewhere. The contract is to deliver there unless the consignee shall require the goods to be delivered at another place."

The consignor or the consignee may give the direction dependent upon who is the true owner, and it is not questioned in this case that Sutherland was such owner.

These are the only errors that were assigned in the court of civil appeals. Others attempted to be assigned here must be overruled.

There being no error in the judgment of the court of civil appeals, it is affirmed, with costs payable by petitioner.