**HINES, Director General of Railroads, v. CHADDICK.**

**No. 11302.**

Court of Civil Appeals of Texas. Dallas.

July 1, 1933.

Rehearing Denied Sept. 23, 1933.

264

C. C. Huff, of Dallas, B. M. McMahan, of Greenville, Wallace Hughston, of McKinney, and Wm. Hodges, of Texarkana, for appellant.

L. J. Truett, of McKinney, for appellee.

BOND, Justice.

On January 31, 1918, appellee, H. R. Chaddick, sold fifty bales of cotton to Carver & Co., and in carrying out said sale delivered the cotton to the Missouri-Kansas & Texas Railroad Company of Texas for shipment from McKinney, Tex., to Greenville, Tex., to be there compressed, reloaded, and shipped to Lumberton, N. C. The railroad company received the cotton and issued and delivered to Chaddick a shipper's order bill of lading therefor, in which said cotton was consigned to the order of Carver & Co., notify W. B. Cooper & Co. at Lumberton. The cotton had been sold to Carver & Co. for 25 cents per pound, aggregating $5,667.

Carver & Co. refused to accept the bill of lading or to pay for the cotton, therefore at no time owned or acquired title to the cotton or bill of lading, and, under the terms of the bill of lading, the cotton was shipped to Greenville, and there delivered to the Greenville Compress Company.

While the cotton was in possession of the railroad company at Greenville, appellee notified O. S. Hines, local agent for said railroad company at McKinney, that Carver & Co. refused to pay for said cotton, that

he was the owner of said cotton and the holder of said bill of lading, and requested said Hines to stop the shipment at Greenville, and at the time of such request turned over to such agent the bill of lading. In addition to the notice and request thus visited upon the railroad company, through its agent at McKinney, appellee followed the instructions by calling its local agent at Greenville and advising him of the circumstances surrounding the sale, that he was the owner of the cotton, and to hold it at Greenville.

On February 7, 1918, the cotton was reloaded on its course at Greenville, and remained in the railroad yards until February 26, 1918, when it passed from the lines of said railroad company and later was delivered to appellee at Lumberton, where it was sold for 19 cents per pound.

On January 23, 1919, appellee brought this suit in the district court of Collin county against Walker D. Hines, Director General of Railroads; Mr. Hines' tenure as Director General expired May 18, 1920; thereafter, in succession, John Barton Payne, James C. Davis, Andrew W. Mellon, Ogden L. Mills, and William H. Woodin were appointed Agents, designated by the President of the United States, to answer such suits for the federal government. On May 1, 1930, Mr. Mellon was substituted as defendant for Mr. Hines, and on February 23, 1932, Mr. Mills was substituted for Mr. Mellon.

On February 25, 1932, the case was tried and resulted in a judgment in favor of appellee, for the sum of $2,993.75, and in due time Ogden L. Mills, then the Federal Agent appealed. Pending the appeal, William H. Woodin, the present Agent, was substituted for Mr. Mills, and he is here designated as the appellant.

■ It may be conceded as an established rule that a person in charge of a station in one locality has no power to act as the agent of his principal, in reference to property which has gone beyond the scope of his agency, and such agent is not required to transmit information imparted to him to another agent of a common employer, beyond the scope of his agency, and that such information is not imputed to the other employee, or to his principal. Congar v. Railroad Co., 24 Wis. 157, 1 Am. Rep. 164; Kauffman v. Robey, 60 Tex. 310, 48 Am. Rep. 264; Labbe v. Corbett, 69 Tex. 507, 6 S. W. 808; Irvine v. Grady, 85 Tex. 125, 19 S. W. 1028; Taylor v. Taylor, 88 Tex. 47, 29 S. W. 1057; Missouri, Kansas & Texas R. R. Co. v. Belcher, 88 Tex. 549, 32 S. W. 518.

■ However, circumstances may, and often do, vary the application of the rule stated —any act of omission or commission of an agent which induces another person to rely thereon to his hurt is so closely allied to the original transaction as to come within the purview of the agent's authority and thus become a part of the thing done. Stoppage in transitu is a valuable right guaranteed to the shipper, when the buyer or consignee is unwilling or unable to pay for the goods shipped.

■ In the case at bar, the cotton was in transit; the buyer had refused to accept it; thus stoppage was necessary. The agent at McKinney knew these facts, was familiar with the details of the transaction, was the government's agent who issued the bill of lading only a few days before; and knew the cotton was to be compressed in Greenville, a short distance away. To whom should the shipper have gone for protection of his rights? The Director General had clothed the McKinney agent with authority to execute the bill of lading in question and to route the shipment for appellee. The powers, duties, and scope of such agent evidently were not familiar to the shipper; therefore the principles of right and justice should require no more of him than to give notice to such agent, whom his principal had held out as representing him in that character of business, and vouchsafed the business intrusted to him. The agent promised, and had the means of the telephone, or the carrier's service wires, to impart the information to the one in actual custody of the cotton to stop the shipment. We believe the facts of this case warrant the holding that a duty rested upon the agent at the point of shipment, as well as the agent at the intermediate point where the cotton was to be compressed, to exercise the care of a reasonably prudent person to aid the shipper in his right of stoppage, and the failure to do so, under the circumstances stated, is imputable to the carrier for whom he was employed in that character of business.

Be that as it may, appellee gave notice to the carrier's agent at Greenville, that he was the owner of the fifty bales of cotton, under the shipper's order bill of lading issued in the name of Carver & Co., and requested its stoppage. The Greenville agent, without requiring further assurance of title, agreed to hold the cotton. The notice thus made was indeed effectual; it was given to the person who had the immediate possession of the cotton and could have unquestionably accorded appellee the rights demanded.

■ Appellee, delivering the bill of lading to the McKinney agent, tendered assurances of ownership of the cotton to him. No tender of the bill of lading was made to the Greenville agent, and he made no demand for its surrender. In the absence of such demand or denial of ownership, the failure of appellee to present the bill of lading became immaterial, and could not have justi-

fied the carrier in refusing to halt the movement of the cotton. Texas Midland R. R. v. Hargroves, (Tex. Civ. App.) 169 S. W. 925.

The shipment of the cotton involved was an interstate shipment, and indeed its transportation is governed by the Federal Bill of Lading Act of 1916 (49 USCA §§ 81–124). The carrier had the right to demand of the shipper satisfactory assurances of title and the surrender of the bill of lading properly indorsed; however, it did not avail itself of that right. Therefore it cannot justify its act in failing to halt the shipment on the ground that appellee did not surrender the bill of lading properly indorsed by the consignee. It was the duty of the carrier to investigate appellee's claim, if it was not satisfied of the assurances made. "It is held to be only just and reasonable that the carrier, when a demand is made on him for the goods by a person other than his bailor or consignee, should be allowed to hold the goods for a sufficient time to investigate in good faith and to satisfy his honest doubts as to their ownership before delivery, without making himself liable in conversion." 4 R. C. L. 843. So, in this case, the owner made the demand on the carrier to stop the transportation of the cotton in ample time for the carrier to investigate and satisfy itself of the rights demanded before the cotton left the Greenville yards.

It is further urged that appellee was not the owner of the bill of lading at the time such alleged conversation was had with the Greenville agent, and that he was not in a position to make such demand; thus the carrier was not compelled to observe such request to stop the shipment. According to the terms of the bill of lading, Carver & Co. was the consignee and consignor, and it, or some indorsee of it alone, could claim the right to control the movement of the cotton, or stop its transportation at an intermediate point in the route designated in the bill of lading.

Appellee, as stated above, was the owner of the cotton, in possession of the bill of lading, and had the bill of lading issued to Carver & Co. for his own convenience in carrying out the terms of sale. The sale was not consummated, and the bill of lading was turned back to the carrier in the form as issued. It was within the power granted the carrier, under the Federal Transportation Act, to have made demand for the surrender of the bill of lading properly indorsed. It did not do so, thus waiving all rights guaranteed to it to demand its surrender by indorsement of the assignee.

It is here urged that the testimony offered tending to show that notice was given to the agent at Greenville to hold the cotton is incompetent and can form no basis for a finding of fact. The only evidence of notice being given to such agent is the telephone conversation which appellee testified he had with "some one purporting to be the freight agent of the M. K. & T. Railroad Company at Greenville." He said, concerning that conversation, that he called for the agent, and that in response to the call some party, whom he took to be the agent, answered, and " * * * notified him that I was the owner of said cotton and held the bill of lading for same. I requested him to hold the said cotton for me at Greenville, Texas, and not to ship the same away from Greenville. In my telephone conversation with the freight agent of the said railway company at Greenville, Texas, the said agent told me that said cotton was then in the yards of said company at Greenville, Texas, and that he would hold the cotton for me and not permit it to be shipped away from Greenville. * * * I do not know of my own personal knowledge at what time the said cotton was shipped away from Greenville."

In contradiction of such testimony, the agent at Greenville denied the conversation in toto, or that he knew of any demand having been made for the stoppage of the cotton. Thus the issue became one for the ultimate determination of a jury. As is held in Southwestern Tel. & Tel. Co. v. Luckett, 60 Tex. Civ. App. 117, 127 S. W. 856, 859, "We think the testimony of appellee and the witness Phipps that they called over the telephone from Phipps' stable for the appellant's office and appellant's exchange operator gave them connection with some telephone from which an answer was received purporting to come from said office shows prima facie, at least as against appellant, that said witnesses were placed in communication with that office. This fact being shown, the answer received from said office over the telephone in reply to said witnesses' statements and request in regard to a matter within the authority of the manager or other person in charge of said office should, in the absence of evidence, to the contrary, be presumed to have been made by some one authorized by the appellant to reply to the request or message so communicated to its office. The testimony of appellant's manager that he had no knowledge of such communication was not as a matter of law sufficient to overcome this presumption, and the question of whether some one in said office authorized to make said answer did in fact make same was one for the jury. Railway Co. v. Heidenheimer, 82 Tex. 201, 17 S. W. 608, 27 Am. St. Rep. 861; Ice Co. v. Dairy Co., 107 Md. 556, 69 A. 405, 16 L. R. A. (N. S.) 746; Railway Co. v. Potter, 36 Ill. App. 590; Wigmore on Evidence, par. 2185."

In the instant case the jury, in response to a special issue, determined that, prior to the date on which said cotton was

shipped from Greenville, Chaddick had the conversation with the agent at Greenville, and notified him to stop the cotton. Therefore the finding of the jury on the controverted issue of fact is conclusive, controls the action of the trial court, and is final on appeal.

Appellant raises the point that appellee, having delayed the prosecution of the suit filed February 23, 1919, without reasonable cause for more than nine years after the date of its institution, and having failed, for more than six years, to substitute Mr. Mellon for Mr. Davis, as defendant, his claim is barred by statutes of limitation; he is guilty of such lack of diligence and such laches as to warrant the court in treating the suit as a stale demand.

Section 206 of the Transportation Act of February 28, 1920, as amended (49 USCA § 74 (a, d, h), declares:

"(a) Actions at law, suits in equity and proceedings in admiralty, based on causes of action arising out of the possession, use or operation by the president of the railroad or system of transportation of any carrier (under the provisions of the Federal Control Act, or of section 1361 of chapter 31, Title 10, Army) of such character as prior to Federal Control could have been brought against such carrier, may, after the termination of Federal control, be brought against an agent designated by the President for such purpose. Such actions, suits, or proceedings may, within the periods of limitation now prescribed by State or Federal statutes but not later than February 28, 1922, be brought in any court which but for Federal control would have had jurisdiction of the cause of action had it arisen against such carrier. * * *

"(d) Actions, suits, proceedings, and reparation claims, of the character above described pending on February 29, 1920, shall not abate by reason of such termination, but may be prosecuted to final judgment, substituting the agent designated by the President under subdivision (a) of this section.

"(h) Actions, suits, proceedings, and reparation claims, of the character described in subdivision (a), (c), or (d) of this section, properly commenced within the period of limitation prescribed, and pending on March 3, 1923, shall not abate by reason of the death, expiration of term of office, retirement, resignation, or removal from office of the Director General of Railroads or the agent designated under subdivision (a) of this section, but may (despite the provisions of section 780 of Title 28, Judicial Code and Judiciary), be prosecuted to final judgment, decree, or award, substituting at any time before satisfaction of such final judgment, decree, or award the agent designated by the President then in office."

The record reveals that this action was commenced before it was barred under the terms of any statute of limitation, by the filing of the original petition and the service of citation on the then Director General. It was an action pending against the federal government on February 29, 1920, at the time of the termination of the federal control of railroads. There was an interval of more than six years from the time James C. Davis resigned as Agent, designated by the President of the United States to answer for the government in this character of suits, until Andrew W. Mellon was substituted as defendant. During three years of that time there was no Agent designated by the President. The mere substitution of one Agent, designated by the President, for another Agent in a suit against a railroad company under federal control, is not the commencement of a new and independent suit within the contemplation of the statute, and the mere failure to make the substitution within the limitation period of time named in the state statutes for the institution of suits after the cause of action accrues, and not afterwards, has no application to suits brought against the government before its termination of control of railroads, or where the suits are brought prior to February 28, 1922. Therefore we conclude that appellee's suit is not barred by the statutes of limitation.

Laches follow by analogy the statutes of limitation. The doctrine of laches in courts of equity is not an arbitrary or technical doctrine. The mere running of time is not of itself a determinative element of laches, as it is of the statute of limitation. "A court of equity applies the rule of laches according to its own ideas of right and justice. Every case is governed chiefly by its own circumstances. Whether the time the negligence has subsisted is sufficient to make it effectual is a question to be resolved by the sound discretion of the court." Withrow v. Walker, 81 Iowa, 651, 47 N. W. 893, 895.

The record shows that this case has been on the docket since 1919; during that time many changes have been made in the governmental agencies in control of the railroad, and more than three years during the pendency of the suit there was no agent to prosecute the suit for the government. During the pendency of the suit, the original court papers were lost, the attorneys first employed, by both plaintiff and defendant, withdrew from the suit, new attorneys were substituted, and plaintiff's health became impaired. Appellant has suffered the loss of the testimony claimed to be pertinent to its defense by the death of Mr. Hines, its agent at McKinney, and of Mr. Carver, a member of Carver & Co. Such loss is unfortunate. It may be presumed that such testimony

would have been material surrounding the issue of notice and the surrender of the bill of lading at the McKinney station, and the price of cotton, which formed the basis of appellee's loss and damage.

■ The ultimate inquiry, therefore, in invoking the doctrine of laches, is on which side would fall the balance of justice in sustaining or denying the plea. Appellee is guaranteed by law of his right of trial, his "day in court"; appellant, its right to demand an ultimate conclusion of the suit and to urge a dismissal for want of prosecution. The delay in asserting the rights of the respective parties seems to have been mutual and acquiesced in by both parties. "Where both parties were equally at fault, neither can assert laches as against the other." 21 C. J. 216. Thus, under the circumstances, the question of laches was one for the exercise of discretion of the trial court, and, as we review the record, it discloses no abuse of such discretion.

We reach the conclusion that the carrier was not justified in shipping the cotton, was guilty of a breach of duty in failing to stop its transportation, and appellee suffered the damages reflected in the judgment of the trial court.

We have considered all of appellant's assignments, and they are overruled. Case is affirmed.

JONES, C. J., not sitting.