**WILKINSON & CARROLL COTTON CO. v. CHICAGO, M. & G. R. CO. et al.**

Circuit Court of Appeals, Sixth Circuit.
May 10, 1929.

No. 5146.

Geo. J. Leftwich, Jr., of Memphis, Tenn. (Wilson, Gates & Armstrong and Julian C. Wilson, all of Memphis, Tenn., on the brief), for appellant.

Clinton H. McKay, of Memphis, Tenn. (Chas. N. Burch and H. D. Minor, both of Memphis, Tenn., on the brief), for appellees.

Before DENISON, MOORMAN, and HICKS, Circuit Judges.

HICKS, Circuit Judge. Appellant, herein called plaintiff, sued appellees, herein called defendants, for damages for the destruction of 122 bales of cotton by fire in the compress and warehouse of Churchill Compress Company at Dyersburg, Tenn., October 11, 1922. The case was tried upon an agreed statement of facts. Each party moved for a directed verdict. Defendants' motion was sustained and a verdict directed accordingly. It followed, of course, that plaintiff's motion was denied. The action of the court in these particulars is the matter presented for review.

Plaintiff was a cotton factor in business at Memphis. Defendants were common carriers by rail. In the cotton season of 1922–23 customers of plaintiff at Hickman, Ky., shipped cotton to it at Dyersburg, Tenn., care of Churchill Compress Company on straight bills of lading or on shipper's order notify bills of lading. Prior to October, 1922, defendants at the direction of plaintiff had delivered all such cotton to the Churchill Compress Company. With reference to such deliveries it is stipulated: "That by long established custom and course of business, of which plaintiff was aware, when cars loaded with cotton arrived at Dyersburg consigned to the Churchill Compress Company or to others in its care, or to parties who had directed that all their shipments of cotton be delivered to said Churchill Compress Company (whether moving under straight bills of lading or order notify bills of lading), such cars were immediately placed by defendants on the tracks above described serving the Churchill Compress at a point convenient for unloading, without other notice to said compress or to the consignees or owners of such cotton of the fact of such arrival and placement. And that defendants had no further service to perform to complete the delivery thereof to such compress."

While the parties were operating under such prevailing and mutually accepted arrangement and practice, the cotton in question along with other cotton was loaded into cars at Hickman, Ky., by the defendant Chicago, Memphis & Gulf Railroad Company. Some of it was shipped by one Bondurant and some by one Hale. Some of it was consigned to plaintiff on straight bills of lading and some on shipper's order notify

bills of lading, but all of it was destined for Dyersburg care of Churchill Compress Company. The cotton was transported by the Chicago, Memphis & Gulf Railroad Company from Hickman to Dyersburg on October 2, 1922, in three cars and arrived at Dyersburg at 4:30 p. m. The cars were immediately delivered to defendant Illinois Central Railroad Company, and by the latter company, in accordance with the directions contained in the bills of lading and in previous instructions of plaintiff, were shortly after 4:30 p. m. placed on the private industry tracks of the Churchill Company adjacent to its unloading platform and at a convenient point for unloading. As reflected by that portion of the stipulation above quoted, this was a complete delivery of the cotton, unless the situation was changed by the following circumstances:

On the afternoon of October 2d (exact hour unknown) a representative of plaintiff telephoned Hattendorf, general freight agent, and Ryan, assistant general freight agent, of defendants, that plaintiff desired to divert future shipments of cotton consigned to it at Dyersburg from the compress of the Churchill Company to the compress of the Dyersburg Company, and was told that its desire would be complied with upon plaintiff giving written instructions to defendants' agent at Dyersburg changing shipping instructions; the new instructions to be confirmed in writing by the shipper to defendants' agent at Hickman. Plaintiff thereupon telephoned Bondurant at Hickman of its desire, and Bondurant on the afternoon of October 2d addressed a letter to defendants' agent at Hickman authorizing the agent to divert all his cotton in transit from Hickman consigned to plaintiff care of Churchill Compress, Dyersburg, to plaintiff, care Dyersburg Compress, Dyersburg, and further requesting the agent to notify the agent at Dyersburg to place any cotton in the yard there with the Dyersburg Compress. This letter was received by defendants' agent at Hickman late that afternoon, and the agent attempted to communicate its contents to defendants' agent at Dyersburg, but was unable to do so until the next morning. On October 2d plaintiff sent a Western Union night letter to Bondurant requesting him to make future shipments to the Dyersburg Compress, which night letter was received at Hickman at 8:20 the following day and delivered in due course. On October 2d plaintiff sent another Western Union night letter to defendants' agent at Dyersburg requesting him to deliver to the Dyersburg Compress all cotton not delivered to the Churchill Compress, which night letter was received at Dyersburg at 7:30 a. m. the next morning and delivered in due course. On October 2d plaintiff wrote defendants' agent at Dyersburg confirming the beforementioned night letter, and stating that it was plaintiff's intention to have the balance of its cotton shipments go to the Dyersburg Compress, and advising that Hattendorf had stated that the agent would change shipping instructions in response to plaintiff's wire. On October 3d plaintiff wrote a formal letter to defendants' agent at Dyersburg instructing him to deliver all its cotton and cotton linters consigned to it to the Dyersburg Compress and agreeing that delivery to it should be completed when cars containing such cotton and cotton linters were placed upon tracks customarily used by such compress for unloading, and that defendants should not be required to give notice to plaintiff or to the compress of the placing of cars, but that the placing of cars should be in and of itself sufficient notice.

These several communications were sufficient to supersede all prior instructions and to require all of plaintiff's cotton thereafter shipped from Hickman to be delivered at the Dyersburg Compress. Assuming that they were also sufficient if given in time to require defendants to divert all of plaintiff's cotton then in transit to the Dyersburg Compress, a right which plaintiff undoubtedly had if properly exercised (Ryan v. Great Northern Ry. Co., 90 Minn. 13, 16, 95 N. W. 758; Virginia & S. W. R. Co. v. Sutherland, 138 Tenn. 266, 270, 197 S. W. 863 [L. R. A. 1918B, 77]), the crucial and determinative question yet remains, to wit: Did it conclusively appear that defendants received any instructions to divert the cotton to the Dyersburg Compress before they had delivered it to the Churchill Compress?

By stipulation it is substantially conceded that without such instructions the delivery to the Churchill Compress was completed at shortly after 4:30 p. m., October 2d. Notice to divert to have been effective must have been given and received before the delivery was completed, and as plaintiff, as its basis of liability, relies upon these directions to divert as exceptions to the contracts as reflected in the bills of lading and as annulling its previous instructions, the burden of proof is upon plaintiff. Clemente Javierre et al. v. Central Altagracia, Inc., 217 U. S. 502, 508, 30 S. Ct. 598, 54 L. Ed. 859, 861.

The District Judge held that the cotton was delivered to the Churchill Compress in accordance with the original directions be-

fore the defendants were notified to divert it to the Dyersburg Compress, and there was substantial evidence to support his conclusion. The cotton was delivered in accordance with the bills of lading and the long-established custom shortly after 4:30 p. m., October 2d. No instructions to divert any cotton either to be shipped or then in transit were received by defendants upon that date, except the telephone message to Hattendorf and Ryan at an unknown hour that afternoon and the letter from Bondurant to the agent at Hickman received late that afternoon. Nothing indicates that these communications were received before the cotton was delivered. Notice to change destination after delivery avails nothing. It was defendants' duty to deliver according to the bills of lading and the original instructions until they were changed, and upon such delivery defendants' contract was performed and they were discharged. To move the cotton again required a new contract of affreightment. Hutchinson on Carriers (3d Ed.) vol. 2, § 660; Moore on Carriers (2d Ed.) vol. 1, § 24; Melbourne v. Louisville & N. R. Co., 88 Ala. 443, 449, 6 So. 762.

For the reasons indicated, the judgment of the District Court is affirmed.