Daniel B. BARGE III

v.

Earl H. SADLER, et al.

Supreme Court of Tennessee,
at Nashville.

March 1, 2002.

Dan R. Bradley, Waverly, Tennessee, and G. Sumner R. Bouldin, Jr., Murfreesboro, Tennessee, for the appellants, Earl and Vera Sadler.

George A. Dean, Nashville, Tennessee, for the appellee, Daniel B. Barge III.

## OPINION

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., E. RILEY ANDERSON, JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Daniel B. Barge III filed a petition seeking to condemn a portion of Earl and Vera Sadler's property for use as an easement for access to his landlocked property. The trial court found that Barge already enjoyed an easement by implication across John Sonday's property; thus, he could not show, as required by the condemnation statute, that he had no other access to a public road. The Court of Appeals reversed the trial court's judgment and held that the Sadler property was the proper location for an easement to Barge's land. The Sadlers make two contentions on appeal: (1) that the Court of Appeals erred in designating the property to be burdened by the easement; and (2) that Barge failed to join all adjoining landowners as indis-

pensable parties defendant. We hold that the jury of view, not the intermediate appellate court, is the proper body to determine the location of an easement granted pursuant to Tenn.Code Ann. § 54–14–101(a)(1) (Supp 2000). We further hold that those owning property upon which an easement could practically be constructed should be named as parties defendant. Therefore, we affirm the judgment of the Court of Appeals holding that the property is landlocked and reverse the judgment locating the easement; in all other respects, the judgment is affirmed. The cause is remanded to the trial court for the appointment of a jury of view and other proceedings consistent with this opinion.

I.  Facts and Procedural Background

Daniel B. Barge III, the plaintiff, owns 411.2 acres of land in rural Humphreys County. Barge purchased a portion of the land on August 20, 1997, and the remainder on August 25, 1997. Both tracts of land were purchased from the Gutierrez family. Ownership of the land prior to the purchases is not a matter of record. The testimony at trial indicates that Barge's property and the adjoining property of the defendants, Earl and Vera Sadler, may have been owned by the same person at some time in the past. It also appears that Barge's property and the property of John Sonday, another adjoining landowner, may have been under common ownership. The record does not reflect whether the prior owners of Barge's tract had an easement for access to a public road; clearly, however, Barge does not.

Although the property surrounding Barge's tract of land is predominantly wooded with several hills and ridges, it appears that the adjoining landowners have access to a public road. Several adjoining tracts of land abut Tumbling Creek Road, which is a 'public thoroughfare. Other adjoining tracts abut Highway 230, which is also a public thoroughfare. To reach his property, Barge must go through a maze of unpaved, heavily wooded roadways. He starts by driving a route located on land that he leases from Gene Pruett. The route leads to an old, narrow, depressed roadbed located on property occupied by the Accurate Arms Hunting Club. Upon reaching the roadbed, Barge drives about two and a half miles before reaching the southeast corner of his land.

In 1997, Barge filed a petition in the Chancery Court for Humphreys County alleging that his property is landlocked. In the petition, Barge contended that a parcel of land, at least 40 feet in width, extending from the southwest portion of the Sadler's property to Tumbling Creek Road is the most adequate and convenient location for an easement from his property to a public road. He therefore requested that the trial court grant condemnation of this portion of the Sadler's land pursuant to Tenn.Code Ann. § 54–14–101 (2000 Supp.). Because the trial court found that Barge enjoyed an easement by implication across Sonday's property to Highway 230, the court ruled that Barge had failed to prove that his land was, in fact, cut off from a public road.[1] Thus, the trial court denied relief.

On appeal, the Court of Appeals concluded that the evidence preponderated against the trial court's finding of an im-

---

1. Pursuant to Tenn.Code Ann. § 54–14–101(a)(1) (2000 Supp.), a petitioner must prove that the land is surrounded or enclosed by the land of another person or persons who refuse to allow the petitioner a private access road. Pursuant to Tenn.Code Ann. § 54–14–102(a) (1998), a petitioner must prove that the land is obstructed entirely from a public thoroughfare by the intervening lands of another or that the available outlets are not adequate and convenient.

plied easement. Considering the matter further, the Court of Appeals held that the evidence clearly established that Barge's property is landlocked, and as such, he is statutorily entitled to an adequate and convenient outlet to a public road. Rather than remanding the case at this juncture, the court further held that given the rough terrain of the area, the Sadler's property would be the most adequate, convenient, and economical location for an easement. The Court of Appeals remanded the case for appointment of a jury of view to lay off and mark a road through the Sadler's land.

On appeal to this Court, the Sadlers raise two issues: (1) whether the Court of Appeals has the authority, absent a report from a jury of view, to determine the property to be burdened by an easement granted to a landlocked property owner; and (2) whether a landlocked property owner seeking condemnation of private land for use as an easement from his or her property to a public road must name all adjoining landowners as indispensable parties defendant.

## II.   Standard of Review

Because the issues are resolved by statutory construction alone, they are questions of law; hence, our standard of review is *de novo* without a presumption of correctness of the trial court's findings. *See Hill v. City of Germantown*, 31 S.W.3d 234, 237 (Tenn.2000); *Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 599 (Tenn.1999).

## III.   Historical Background

It seems that before the invention of modern transportation there was little need for public roads. *See* Joseph J. Kalo & Monica Kivel Kalo, *Putting the Cartway before the House: Statutory Easements by Necessity, or Cartways, in North Carolina*, 75 N.C.L.Rev.1943, 1956–57 (1997). As a result of the nearly nonexistent need for roads, land was divided without regard for roadway access, and people frequently moved to unsettled, remote areas where no access to a public roadway was available by grant or deed. *Id.* Under the early common law, as the need arose for the right to cross another's property, landlocked property owners were, in limited circumstances, granted the right to use the land of another for this special purpose. 3 James Kent, *Commentaries on American Law*, 608 (12th ed. 1884). The interest in the adjoining land was commonly referred to as an easement. *Id.* Generally, the common law limited this relief to situations in which past unity of title, obvious trespassory use, or public necessity was established. *See* Mahlon L. Townsend, Comment, *Easements in Tennessee*, 24 Tenn. L.Rev. 219, 224–35 (1956).

Eventually, the use of public roads increased. *See Kalo*, supra, at 1957–58. Recognizing that a lack of access to public roads denies a citizen the right to use his or her property effectively,[2] lawmakers enacted statutes which established a procedure whereby private individuals could condemn land for easements extending from their landlocked property to a public road.[3] *Id.* These statutes recognized ne-

---

**2.** In *Bashor v. Bowman*, 133 Tenn. 269, 180 S.W. 326, 326–27 (1915), the Court noted that:

> public roads may be compulsorily opened over private property to the farms and residences of individuals 'when necessary to enable such individuals to reach the highways and perform their public duties, and

> to afford those who desire to visit such individuals, on business or socially, access to their farms and houses.' The public is interested in every citizen having a right of way to and from his lands or residence.

**3.** The property that was burdened by the easement became known as the servient estate, and the property that received the benefit

cessity as justification for an easement even where the common law requirements were not met. Restatement (Third) of Property § 2.15 cmt. a (1989). Thus, the statutory law provided "a broader solution by permitting the owners of landlocked property to purchase necessary access rights regardless of the manner in which the landlocking occurred." *Id.* Tennessee's first such statute was enacted in 1811, almost two hundred years ago. *See Townsend,* supra, at 227, n. 71; *Bashor v. Bowman,* 133 Tenn. 269, 180 S.W. 326, 326–27 (1915).

As cultivation of land became widespread, the need for public roads grew. The need further increased with the invention of railroads and automobiles. To accommodate its citizens, states began to develop highway systems. As a consequence of the new highways, many older easements leading to public roads became less convenient and, in some instances, impassable. Taking these changes into account, some legislatures amended the private condemnation statutes to provide that when a private passage-way became impassable or unreasonably inconvenient a new or improved way could be constructed. *See Kalo,* supra, at 1957–58.

■ The Tennessee legislature was not only concerned with providing vitally important outlets for landlocked property owners, it was also concerned with rights of citizens to enjoy their property without infringement by neighbors. Public policy demands that public records and the words of the conveying instrument enable citizens purchasing real estate to accurately determine the property rights obtained. The later imposition of a burden on one's property title is in derogation of this principle. Likewise, both the Federal and Tennessee Constitutions strictly limit the circumstances under which private property may be condemned.[4] The existing statutes governing the condemnation of private property are thus designed to provide a remedy for landlocked property owners while protecting, to the extent possible, the interests of the servient estate owner.

## IV. Analysis

### A. Easement Location

■ The first issue in the case under submission concerns the propriety of allowing an appellate court to designate the servient estate in a condemnation proceeding. The Sadlers contend that a jury of view,[5] rather than the appellate court, is

from the easement became known as the dominant estate. The owner of the dominant estate bore the responsibility of compensating the servient estate owner for the condemned property. *Kalo,* supra, at 1956.

4. Pursuant to the Fourteenth amendment to the United States Constitution, no "State shall deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Pursuant to Article I, § 8 of the Tennessee Constitution, "no man shall be ... deprived of his life, liberty, or property, but by the judgment of his peers or the law of the land." Pursuant to Article I, § 21 of the Tennessee Constitution, "no man's particular services shall be demanded, or property taken, or applied to public use, with-

out ... just compensation being made therefor." Courts have held that these articles apply to the taking of private property for both public and private use. *Cross v. McCurry,* 859 S.W.2d 349, 353 (Tenn.Ct.App.1993) ("It has generally been held that the state does not have the power to authorize the taking of the property of an individual without his consent for the private use of another, even on the payment of full compensation."); *see also Alfred Phosphate Co. v. Duck River Phosphate Co.,* 120 Tenn. 260, 113 S.W. 410, 415 (1907).

5. The jury of view is composed of five "disinterested persons having all of the qualifications of jurors in the circuit court, unless the parties agree otherwise ..." Tenn.Code Ann. § 54–14–105 (1998).

the proper body to determine which property should be burdened by an easement granted to a landlocked property owner. We agree.

The procedure for condemnation of an easement across land obstructing access to a public road is established by Tenn.Code Ann. § 54–14–101(a)(1) (2000 Supp.). This section clearly provides that it is the jury of view which shall lay off the road of ingress and egress:

> When the lands of any person are surrounded or enclosed by the lands of any other person or persons who refuse to allow to such person a private road to pass to or from such person's lands, it is the duty of the county court, on petition of any person whose land is so surrounded, to appoint a jury of view, who shall, on oath, view the premises, and lay off and mark a road through the land of such person or persons refusing, as aforementioned, in such manner as to do the least possible injury to such persons, and report the same to the next session of the court, which court shall have power to grant an order to the petitioner to open such road ...

Tenn.Code Ann. § 54–14–101(a)(1).

■ Thus, the statute provides that once the court finds that property is landlocked, a jury of view must be appointed to determine the portion of private, adjoining land where the placement of an easement will be least injurious. The jury must actually "view" the landlocked property and the surrounding premises to make this determination. *Id.* The jury must also assess the damages the petitioner must pay the landowner for use of the easement. *Id.; see also Swicegood v. Feezell*, 29 Tenn.App. 348, 196 S.W.2d 713, 715–16 (1946). It is only after a report by the

jury of view is submitted that the trial court "shall have the power to grant an order to the petitioner to open such road ..." Tenn.Code Ann. § 54–14–101(a)(1).

■ It is well established that statutes conferring the power to affect private property rights without the owner's consent must be strictly construed. *Clouse v. Garfinkle*, 190 Tenn. 677, 231 S.W.2d 345, 348 (1950). The Court of Appeals' judgment designating the Sadler's property for the easement, entered without the benefit of a report from a jury of view, clearly contravenes the procedure set out by the condemnation statute and is, therefore, error.

### B. Proper Parties Defendant

■ The next issue before the Court is whether Barge must name all adjoining landowners as defendants. The Sadlers assert that all adjoining landowners must be joined as indispensable parties in order to determine: (1) whether there already exists access to the property; and (2) which property is to be burdened with an easement. Barge, on the other hand, contends that Tenn.Code Ann. § 54–14–103 (2000 Supp.) requires that a landlocked plaintiff name as defendants only those parties believed to be affected by the proceedings. Both Barge and the Sadlers rely heavily upon unreported Court of Appeals cases as support for their positions.[6] We are, however, of the opinion that this issue is controlled by the language of applicable statutes.

■ Concerning who must be named by the petitioner as parties, Tenn.Code Ann. § 54–14–103 provides, in pertinent part, as follows:

> (a) Such person or persons desiring to secure such easement or right-of-way

---

**6.** *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886, n. 2 (Tenn.1991) (As a general rule, unpublished opinions should not be cited in published opinions.).

may file their petition in the county where any of the lands affected by the proceedings lie:

(1) Making all parties owning or interested in any way in the lands, or property to be affected by the easement or right-of-way parties defendant thereto ...

The statutory language suggests that the petitioner possesses some certainty about the ultimate location of the easement and thus can name in the petition the owners of the land that will be condemned. This Court recognizes that the petitioner has no assurance of the easement location until the jury of view has performed its inquiry and reported its conclusions to the court. Tenn.Code Ann. § 54–14–108 (1998). As a result, it is impossible for a petitioner to name with certainty the parties "to be affected" before the jury submits its report. It is possible, however, for the petitioner to name as defendants those who own land which may be affected or, in other words, those who own land where an easement could possibly be placed. We therefore construe Tenn.Code Ann. § 54–14–103 as requiring the plaintiff to name as defendants the owners of adjoining land where an easement possibly could be located.

■ Under this construction of the statute, the trial courts have the obligation to inquire whether the petitioner has named in the petition all landowners whose property can provide a possible outlet. Tenn. R. Civ. P. 19.01;[7] Tenn.Code Ann. § 54–14–112 (1998).[8] If the court finds that a petitioner has not done so, the court may order the petition to be amended to join the absent parties. Tenn. R. Civ. P. 19.01. Additionally, if the named defendants question the absence of adjoining landowners as parties, they may seek the joinder of such parties by motion. In determining whether a property owner should be joined as a party, the trial court should not consider whether an easement across his or her property would be adequate, convenient, or cost efficient, for pursuant to Tenn.Code Ann. §§ 55–14–101, –102, and –111, this function belongs to the jury of view. The court should merely determine whether there is a realistic possibility of locating an easement on the land. In doing so, the court may consider the terrain and inherent dangers associated with the property, for instance, the existence of cliffs, large waterways, or extreme wetlands.

■ In any event, the failure to join an owner of adjoining land as a party does not limit the jury of view's power to examine and include such property in its considerations. By statute:

[T]he jury shall be authorized to locate the easement or right-of-way at the place set out in the petition or at any other place, care being taken to locate

---

7. Tenn. R. Civ. P. 19.01 provides that "[a] person who is subject to the jurisdiction of the court shall be joined as a party if[:] (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may[:] (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring ... inconsistent obligations by reasons of the claimed interest. If the person

has not been so joined, the court shall order that the person be made a party."

8. Tenn.Code Ann. § 54–14–112(a) provides that: any person "may file objections to the [jury of view's] report." Section 54–14–112(b) provides that: "If no objection is filed to the report or upon objection being filed thereto and heard and considered by the court, the report may be confirmed by the court, or set aside and another writ of inquiry awarded by the court."

same where it will be of service to the petitioners and occasion as little damage as practicable to the defendants.

Tenn.Code Ann. § 54–14–111 (1998). The statute specifically provides that the jury of view may locate an easement "at the place set out in the petition or at any other place." *Id.* Again, the statutory language must be strictly construed, and the jury must therefore be allowed to consider all of the surrounding property. *See Clouse v. Garfinkle,* 190 Tenn. 677, 231 S.W.2d 345, 348 (1950). However, only those who are actually made parties may have their property interests affected by the condemnation proceedings.[9] Consequently, should the report from the jury of view locate the easement on the land of a non-party, the report must be set aside and another jury of view appointed for reconsideration of the petition after that landowner and all other interested parties have been joined; only then may the petitioner be granted relief. Tenn.Code Ann. § 54–14–112; Tenn.Code Ann. § 54–14–101(a)(1) (2000 Supp.). As stated in *Swicegood v. Feezell,* 29 Tenn.App. 348, 196 S.W.2d 713, 715 (1946),[10] these statutes "do not say that a proceeding will be void if the property owners are not made parties; [w]hat the language means is that one cannot acquire rights through and over these properties unless these parties are made parties to the action." *Id.; see also Brady v. Correll,* 20 Tenn.App. 224, 97 S.W.2d 448, 451–52 (1936). It follows that the failure to join all adjoining property owners as parties defendant is not fatal to Barge's claims of being landlocked. As to this issue, the Court of Appeals is affirmed.

## V. Conclusion

Accordingly, the judgment of the Court of Appeals is reversed as to its holding that the easement be located on the Sadler's property; in all other respects, the

9. Tenn.Code Ann. § 29–16–106 (2000) ("The proceedings shall only cover and affect the interest of those who are actually made parties ..."); Tenn.Code Ann. § 54–14–101(d) (2000 Supp.) ("Any petition or action under the provisions of this chapter shall be subject to title 29, chapter 16 ...").

10. In *Swicegood,* the Court of Appeals construed earlier versions of the statutes here at issue. The Code of Tennessee (orig. ed.1932) § 2746 entitled "Condemnation of easement or right of way over intervening lands to a public highway; jurisdiction; parties not making proceeding multifarious" provided, in pertinent part, that:

Any person owning any lands, ingress or egress to and from which is cut off or obstructed entirely from a public road or highway by the intervening lands of another, or who has no adequate and convenient outlet from said lands to a public road in the state, by reason of the intervening lands of another, are given the right to have an easement or right of way condemned and set aside for the benefit of such lands over and across such intervening lands or property.

The Code of Tennessee (orig. ed.1932) § 2747 entitled "Petition to make owners parties; bond for costs; process or publication; unborn remaindermen bound by proceedings" provided that:

Such person or persons desiring to secure such easement or right of way may file their petition in the county where any of the lands affected by said proceedings lie, making all parties owning or interested in any way in the lands, or property to be affected by said easement or right of way parties defendant thereto; and shall set out the portions of land or property desired for said easement or right of way and the amount, extent, and location of same desired; the name or names of the owners or those interested in any way in same or to be affected by said proceedings, or if unknown or their residence or citizenship cannot be ascertained by diligent inquiry, the facts are to be stated; the object for which said easement or right of way is wanted; and praying that a sufficient amount of the property be set apart by metes and bounds for said easement or right of way and that petitioners be put into possession of the same.

judgment is affirmed. The cause is remanded for further proceedings in which the trial court shall require Barge to name as parties defendant all landowners whose property may provide a useful easement, though the jury of view shall not thereby be limited in its consideration of all the adjoining property, and for such other proceedings consistent with this opinion. Costs of the appeal are taxed to Daniel B. Barge III.