# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned On Brief May 22, 2002

## LARRY MILLARD BUTLER v. STATE OF TENNESSEE EX REL. GWENDOLYN ELIZABETH BUTLER

**Appeal from the Chancery Court for Haywood County**
**No. 11778     George R. Ellis, Chancellor**

---

**No. W2001-01137-COA-R3-CV - Filed December 18, 2002**

---

This is a contempt of court case.  The father and mother were divorced in August 1999.  The father was ordered to make child support payments to the mother.  The mother later filed a motion to require the father to pay his child support obligation through income assignment.  The mother then sought the assistance of a state-authorized child support enforcement contractor to assist her in obtaining an increase in child support.  This act triggered statutory provisions associated with Title IV-D of the Social Security Act.  The trial court denied the mother's motion to require income assignment, and ordered that the child support payments continue to be paid directly to the mother. The child support contractor then caused a child support payment coupon to be sent to the father, and also issued, on behalf of the Tennessee Department of Human Services, an administrative order to redirect the child support payments to the State's child support collection and disbursement unit. In response, the father filed a motion to hold the mother in civil contempt for taking actions to have the child support payments made by income assignment, and also sought an order enjoining the mother from utilizing the child support contractor.  The trial court ordered that the administrative order be set aside.  The mother then filed another motion, inter alia, to have the father pay child support by income assignment through the State's central child support collection and disbursement unit.  The father filed another motion to have the mother and the child support contractor cited for contempt of court.  The trial court held the mother and the child support contractor in contempt, fined each of them, ordered that they reimburse the father for the administrative fees and his attorney's fees, and pay court costs.  We reverse, holding that the finding of contempt by the trial judge was an abuse of discretion because the original order was contrary to Tennessee law; Tennessee statutes require the father's child support payments to be redirected through the State child support collection and disbursement unit, and the record does not include evidence supporting an exemption from the statutory requirement that the payments be made by income assignment.

**Tenn. Rule App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Paul G. Summers, Attorney General and Reporter, and Stuart F. Wilson-Patton, Senior Counsel, Office of the Attorney General, for appellant, State of Tennessee.

Scott K. Haynes and Austin L. McMullen, Nashville, Tennessee, for appellant, Maximus, Inc.

Mary Jo Middlebrooks, Jackson, Tennessee, for appellee, Larry Millard Butler.

## OPINION

On August 12, 1999, Defendant/Appellant Gwendolyn Elizabeth Butler ("Mother") and Plaintiff/Appellee Larry Millard Butler ("Father") were granted a divorce. Among other issues, Father was ordered to pay child support directly to Mother.

On September 17, 1999, Mother, through her attorney, filed a motion to require Father to pay additional child support. Mother asserted that Father had previously mislead the trial court regarding his income, and therefore the amount of the child support payments should be increased. This motion was not heard immediately. While the motion to increase the child support payments was pending, on November 5, 1999, Mother filed a motion seeking to have the child support payments made by income assignment because Father had failed to pay child support in a timely manner.[1] On January 3, 2000, Mother visited Appellant Maximus, Inc. ("Maximus"), a state-authorized child support enforcement agency, to obtain assistance in increasing the amount child support she received from Father. On January 10, 2000, Father filed a motion to have Mother held in civil contempt, arguing that she failed to abide by the parties' divorce decree with regard to his scheduled visitation with the minor children. A hearing was held on Father's motion on January 13, 2000. On March 29, 2000, the trial court entered a written order that, among other issues, required Father to continue making his child support payments directly to Mother.[2]

After the hearing, Father received from Maximus a child support coupon, in effect, an invoice for a child support payment that has attached a payment coupon to be mailed back to the State of Tennessee Office of Child Support Enforcement along with the obligor's child support payment.

---

[1]During the months of August and September 1999, Mother also moved (1) to have a portion of the divorce decree clarified, (2) to modify visitation because Father was not being adequately monitored during visitation so as to protect the children, and (3) to order Father to continue providing medical insurance for the parties' minor and handicapped children.

[2]In addition to ordering Father to continue making payments directly to Mother, the trial court also ordered that the case be referred to LeBonheur Center for Children in Crisis for evaluation, and ordered the parties and their children to submit to evaluation through the Department of Children's Services. The trial court also ordered that visitation be exercised on certain dates, and then reserved all other pending matters. Finally, the trial court set the case for review, pending receipt of the evaluation from LeBonheur Center for Children in Crisis.

The coupon was sent to Father as a result of Mother's application for assistance from Maximus in the beginning of January 2000. After Father received the payment coupon, Father's attorney sent a letter to Maximus reminding Maximus that the trial court had ordered Father to make the child support payments directly to Mother. The letter to Maximus from Father's attorney also asserted "that the Chancellor would be outraged to learn that his direct orders are being contravened." Maximus responded to the letter, noting that, under section 71-3-124 of the Tennessee Code Annotated, as a Title IV-D Agency, it was not permitted to refuse Mother's application for assistance.[3] In its response, Maximus explained that, once the case qualifies as a Title IV-D child support case, Tennessee law does not permit direct payment of child support from Father to Mother.[4]

On April 24, 2000, the Tennessee Department of Human Services, through Maximus, sent Father an Administrative Order to Redirect Child Support Payments, ordering Father to send all child support payments to the Central Child Support Receipting Unit, which is the State's central child support collection and disbursement unit. On May 12, 2000, Father moved, inter alia, to enjoin Maximus from any further action as Mother's agent.[5]

On May 23, 2000, two days prior to the hearing to enjoin Maximus from acting as Mother's agent, Father and his employer each received an administrative income assignment order, issued by the Tennessee Department of Human Services, again through Maximus. This order required Father's employer to withhold Father's child support obligation from his paycheck and to remit those funds to the Central Child Support Receipting Unit.

At the hearing held shortly after that on May 25, 2000, Father testified that both he and his employer received letters informing them that Father's wages were to be garnished the following week to pay his child support obligations. Mother testified that she went to Maximus only to seek help to obtain an increase in child support payments, not for the purpose of instituting a wage assignment that would garnish Father's wages. The State's attorney, representing Maximus, opposed Father's motion to enjoin Maximus from acting as Mother's agent, stating that Maximus was not a party to the action, nor did it act as an attorney or agent for Mother. The attorney explained to the trial court that when Mother sought help from Maximus, Mother's case fell under Title IV-D of the Social Security Act, and accordingly, pursuant to statute, Father's payments could not be made directly to Mother, but had to be paid to the Central Child Support Receipting Unit. Counsel for

---

[3]Section 71-3-124(c)(1) of the Tennessee Code Annotated states: "Upon the filing of an application by an individual not otherwise eligible for support services under this section, the department may initiate support actions for an individual, in accordance with the provisions of Title IV-D of the Social Security Act, as amended." Tenn. Code Ann. § 71-3-124(c)(1) (Supp. 2000).

[4]Section 36-5-101(a)(4)(A)(ii) states: "[I]n all Title IV-D child or spousal support cases in which payment of child or spousal support is to be made by income assignment, or otherwise, . . . [payment] must be made to the central collection and disbursement unit as provided by § 36-5-116 . . . ." Tenn. Code Ann. § 36-5-101(a)(4)(A)(ii) (2001).

[5]Father also moved to compel Mother to comply with visitation orders and to find Mother in contempt for failure to pay certain marital debts. The trial court ordered visitation to continue as scheduled, and, finding that Mother was in contempt for failure to pay marital debts, ordered Mother to pay those debts.

Maximus also argued that Father failed to exhaust his administrative remedies before seeking relief from the trial court. Maximus cited to the trial court the applicable federal and state statutes as well as Tennessee caselaw.

Following the parties' arguments, the trial court issued an oral ruling, stating that although

Maximus Child Support Services issued an administrative order pursuant to statute, the Court finds that there is no evidence that the father is or ever has been in arrears on the support as ordered by this Court. The Court therefore finds that under T.C.A. [§] 36-5-501 that the same shall be set aside. And the Court finds that it's in the best interest of the children that the child support payments shall continue to be paid as ordered by this Court until the hearing of July the 27th when this Court will receive the evaluation of all the parties concerning the issues of the custody and visitation.

The trial court then ordered that the Administrative Order filed by Maximus, pursuant to Tennessee statute, be set aside.

On July 11, 2000, Father filed a motion to have his child support obligation reduced, alleging a decrease in his income. On July 27, 2000, Maximus filed a motion on Mother's behalf to increase the amount of child support, based on Father's failure to exercise standard visitation as contemplated in the Tennessee Child Support Guidelines. The motion also sought an order requiring that all future child support payments be paid through the Central Child Support Receipting Unit. On August 9, 2000, the trial court heard the cross motions. Among many other issues,[6] the trial court reduced Father's child support payments to $89 per week for two of the minor children, and again ordered Father to pay child support directly to Mother. This order was entered on September 12, 2000.

On October 15, 2000, Father received, from the Tennessee Department of Human Services, a "Notice of Administrative Offset and Federal Tax Refund Offset," based on a $5,302 child support arrearage, stating that any federal income tax refund to which Father might be entitled would be intercepted to satisfy his child support debt. In response, on October 27, 2000, Father filed a motion to hold Mother and Maximus in civil contempt. Father's motion again sought to enjoin Maximus from taking further action against Father, and to rescind any pending actions taken against him. In his motion, Father asserted that his child support obligations were current and that he had made his payments in a timely manner. The State answered Father's motion on Mother's behalf, and moved to dismiss Father's claim for lack of subject matter jurisdiction. In this response, Mother argued that

---

[6]The trial court also adjudicated the following additional issues: Mother's continued custody of the children; enrollment of two of the children in counseling at LeBonheur Children's Medical Center; visitation under supervision of the Tennessee Department of Children's Services contingent upon Father's enrollment in counseling; finding that Father was not underemployed; DNA testing to determine the parentage of one of the parties' children; health and dental insurance; money Mother owed Father from prior contempt matter; execution of a quitclaim deed so that Mother could refinance the home; and reservation and abeyance of various other issues.

the trial court did not have subject matter jurisdiction because Father did not properly exhaust his administrative remedies as required by law.[7]

On December 14, 2000, the trial court heard the parties' arguments with regard to multiple issues but reserved the contempt issues for a later date. On March 2, 2001, the State moved to dismiss Maximus from the motion for civil contempt because Maximus was not a party to the action and had not been properly served as required by law. On March 7, 2001, the trial court heard the parties' arguments regarding Father's motion for civil contempt, Mother's motion to dismiss, and the State's motion to dismiss the contempt portion against Maximus.

At the hearing, Father testified that, with the exception of a check not signed and a check lost in the mail, he had never been behind in his child support payments. The State's attorney, representing Maximus, explained at length, that, regardless of Father's timely payments to Mother, once Mother enlisted Maximus's services, Father was obligated under state and federal law to begin making his payments through the Central Child Support Receipting Unit. The State's attorney noted that Maximus was "between a rock and a hard place" because it had two opposing directives; on one hand, the trial court's previous order requiring Father to make support payments directly to Mother, and on the other hand, the state and federal regulations requiring Father to make his payments directly to the State. Maximus's Project Manager and Title IV-D Administrator for Mother's district testified that Maximus did not represent Mother, but rather the children's best interests, and that it had no choice but to assist the Mother when she requested the services of Maximus. The Project Manager also noted that Father had not pursued the administrative appeal available to him. At the end of the parties' presentation of proof, the trial judge issued an oral order that found Maximus and Mother to be in civil contempt, fined them each $50, ordered them to reimburse Father $35.50 in administrative fees, and pay Father's attorney fees of $2,097.64 for the contempt hearing, as well as court costs. On April 12, 2001, the trial court issued a written order setting forth the same terms that were in the March 7, 2001 oral ruling. From this written order, Mother and Maximus now appeal.

On appeal, Mother argues that the trial court erred in failing to require Father to pay his child support obligation to the Child Support Receipting Unit through an income assignment, and that the trial court lacked jurisdiction to set aside the State's administrative order for income assignment. Mother also argues that the trial court erred in finding Mother in contempt, and that it erroneously

___

[7]Under section 36-5-1002(a)(9) of the Tennessee Code Annotated, "review of income tax refund intercepts shall be conducted pursuant to the [Tennessee Department of Human Services'] existing rules or as they may be further amended; . . ." Tenn. Code Ann. § 36-5-1002(a)(9) (2001). Chapter 1240-2-3-.2(3) of the Rules of the Tennessee Department of Human Services, Child Support Services Division states: "Any individual who has received notice that his/her federal tax refund is or will be intercepted and applied to a past due support obligation, may request and receive a fair hearing . . . ." Rules, Tenn. Dept. of Human Servs., Child Support Servs. Div., Chapter 1240-2-3-.2(3). Section 36-5-1003 of the Tennessee Code Annotated refers to a judicial review of the outcome of such an administrative hearing. *See* Tenn. Code Ann. § 36-5-1003 (2001). In addition, the third paragraph of Father's Notice of Administrative Offset and Federal Tax Refund Offset states: "You have the right to contest our determination that this amount of past-due support is due, and you may request an administrative review. To request an administrative review, you must contact us within fifteen (15) days of the date of this notice . . . ."

ordered Mother to pay a fine, costs, and attorney's fees. Maximus, on appeal, argues that the trial court erred in finding Maximus in contempt because Maximus was not under a court order requiring or prohibiting anything, and that even if it was, such an order could not be lawful.[8]

Questions of law are reviewed de novo, with no presumption of correctness given to the decision of the court below. *See Barge v. Sadler*, 70 S.W.3d 683, 686 (Tenn. 2002). The determination of a contempt order is within the sound discretion of the trial court, subject to the absolute provisions of the law. *Robinson v. Air Draulics Eng'g Co.*, 377 S.W.2d 908, 911-12 (Tenn. 1964). Therefore, a contempt order is final, unless its issuance was a plain abuse of discretion. *Id.* (citation omitted). A trial court abuses its discretion when it reaches a decision against logic that causes a harm to the complaining party or when the trial court applies an incorrect legal standard. *Eldridge v. Eldridge*, 72 S.W.3d 82, 85 (Tenn. 2001) (citing *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). The decision of the trial court "will be upheld so long as reasonable minds can disagree as to the propriety of the decision [of the trial court]." *State v. Scott*, 33 S.W.3d 746, 751 (Tenn. 2000).

In order to evaluate the trial court's order of contempt, we must first examine the decisions which underlie it. The trial court's finding of contempt came after Father had received from the Tennessee Department of Human Services a "Notice of Administrative Offset and Federal Tax Refund Offset," based on an alleged child support arrearage. The finding of contempt apparently resulted from the trial court's belief that Mother and Maximus, in taking actions that culminated in the offset notice being sent to Father, had contravened its earlier orders directing Father to make child support payments directly to Mother, rather than by income assignment through the Central Child Support Receipting Unit. Therefore, we must scrutinize the trial court's order directing Father to make the child support payments directly to Mother.

A tutorial in the statutes governing child support payments in Title IV-D cases is provided in the opinion by Judge William Koch of this Court in *Baker v. State ex rel. Baker*, No. 01A01-9509-CV-00428, 1997 Tenn. App. LEXIS 856 (Tenn. Ct. App. Dec. 5, 1997). In *Baker*, the noncustodial parent, the mother, subject to a child support order, petitioned the trial court to modify her child support obligation. *Id.* at *3. Neither the mother nor the father received public assistance. Child Support Services of Davidson County responded on behalf of the father, asserting that the mother was in arrears in her child support obligation and seeking an increase in the amount of the child support payments. *Id.* at *3-4. Child Support Services was a private entity that had contracted with the Department of Human Services to provide Title IV-D child support collection services. *Id.* at *3, fn. 2. The trial court modified the child support payments and directed the mother to pay a monthly amount toward the outstanding arrearage. It did not impose a wage assignment, nor did it require the mother to make her child support payments through the clerk of the trial court. *Id.* at *5.

---

[8]To the credit of counsel for Father, Father's appellate brief supports the decisions of the trial court but acknowledges that there is no law against the positions on appeal taken by Mother and by Maximus.

In response, Child Support Services asked the trial court to require the mother to make her child support payments through the clerk of the trial court. *Id.* The trial court declined to do so, stating that no wage assignment was necessary, and asserting that a wage assignment would be utilized by the father to alienate the children from their mother. *Id.* at 5-6. The Attorney General appealed. Consequently, the ***Baker*** court considered on appeal "whether the trial court may, in its discretion, excuse an obligor parent from paying child support through the trial court clerk." *Id.* at 6.

The ***Baker*** court explained that the child support enforcement statutes at issue arose from Congress's concern about an increase in spending pursuant to the Aid to Families with Dependent Children ("AFDC") program:

> Responding to the significant increases in AFDC spending, Congress enacted the Social Service Amendments of 1974 which include Title IV, Part D of the Social Security Act. The Title IV-D program is designed to provide incentives for states to improve their own laws and programs aimed at collecting child support from absent parents. For states that bring their laws and programs into compliance with federal standards, Title IV-D provides increased federal matching funds. States who do not comply with the federal requirements face the prospect of reduced AFDC matching funds.

*Id.* at 7-8 (footnote omitted). In order to avoid custodial parents being forced to seek AFDC assistance, the Title IV-D program was set up to require states to provide child support collection assistance "to all custodial parents, not just those who were receiving AFDC assistance." *Id.* at *9. In response, Tennessee enacted statutes that complied with federal requirements:

> The General Assembly responded to Congress's changes in the Title IV-D program by enacting the Child Support Enforcement Act of 1985. Among other things, this Act requires that child support in Title IV-D cases must be paid through the Clerk of the trial court . . . . The Act also established procedures for wage assignments. . . . In 1994, the General Assembly reiterated that child support payments in all Title IV-D cases must be paid either to the trial court clerk or to the Department of Human Services . . . and that the trial court clerks were entitled to a fee for their collection and distribution services. . . .
>
> Two dispositive conclusions can be drawn from the federal and state legislation involving the Title IV-D program. First, Title IV-D child support collection services are available to all custodial parents notwithstanding their financial status. . . . Second, a Title IV-D proceeding is commenced when a custodial parent applies to a Title IV-D service provider for assistance in establishing, modifying, or collecting child support. For the purposes of the Title IV-D program, it makes no difference whether the proceeding began as a Title IV-D proceeding or whether the custodial

parent initiated the proceeding or is responding to the obligor parent's petition to modify or eliminate an existing child support obligation.

*Id.* at *11-13. The **Baker** court found that, even though the case had not begun as a Title IV-D proceeding, it became one when the custodial parent sought the assistance of Child Support Services, an entity that contracted with the Department of Human Services to provide Title IV-D child support collection services. *Id.* at *14. Once the case became a Title IV-D proceeding, "the trial court lost its discretion to determine how [the obligor parent] should make her child support payments." *Id.* The **Baker** court concluded that Tennessee statutes required the obligor parent, there the mother, to pay child support through the trial court clerk and pay the processing fee to the clerk. *Id.*

In the case at bar, Mother was entitled, under the Tennessee statutes enacted to comply with Title IV-D requirements, to seek the assistance of a state-authorized Title IV-D child support services contractor such as Maximus. Once she did so, the proceeding became a Title IV-D proceeding. *See* **Baker**, 1997 Tenn. App. LEXIS, at *14. When a party seeks the assistance of a state-authorized Title IV-D provider, from that point forward, all payments must be made through the state Child Support Receipting Unit. 42 U.S.C. § 6546; Tenn. Code Ann. § 36-5-116(a)(1) (2001). Consequently, once Mother sought assistance from Maximus to increase her child support payments, the trial court lost its discretion to order Father to make child support payments directly to Mother.

Moreover, under Tennessee statutes, as well as federal statutes, with few exceptions, such child support payments must be made by income assignment. 42 U.S.C. § 666(a)(1)(A),(B); Tenn. Code Ann. § 36-5-501(a)(1) (2001). Section 36-5-501(a)(1) of the Tennessee Code Annotated states in part: "For any order of child support issued, modified, or enforced on or after July 1, 1994, the court shall order an immediate assignment of the obligor's income . . . . The order of assignment shall issue regardless of whether the support payments are in arrears on the effective date of the order." Tenn. Code Ann. § 36-5-501(a)(1) (2001). The statute, however, permits a few limited exceptions from the general rule:

(2) Income assignment under this subsection shall not be required:

(A) If, in cases involving the modification of support orders, upon proof by one party, there is a written finding of fact in the order of the court that there is good cause not to require immediate income assignment and the proof shows that the obligor has made timely payment of previously ordered support. "Good cause" shall only be established upon proof that the immediate income assignment would not be in the best interests of the child. The court shall, in its order, state specifically why such assignment will not be in the child's best interests; or

-8-

> (B) If there is a written agreement by both parties that provides for alternative arrangements. Such agreement must be reviewed by the court and entered in the record.

Tenn. Code Ann. § 36-5-501(a)(2)(A) and (B). Thus, income assignment is not required if the parties have a written agreement to the contrary, or, under certain circumstances, if the trial court finds that income assignment is not in the best interests of the children.

In this case, although the divorce decree issued by the trial court ordered Father to make child support payments directly to Mother, there was no agreement by both parties as contemplated in section 36-5-501(a)(2)(B). Therefore, this exception to the requirement of wage assignment is not applicable.

The second exception to the requirement of wage assignment, set forth in section 36-5-501(a)(2)(A), is applicable when such a wage assignment is not in the best interests of the children, provided certain requirements are met, as quoted above. Indeed, in its order of July 13, 2002, the trial court found that Father had made timely payments and that it was in the best interests of the children to waive the requirement of income assignment. This order required Father to make the child support payments directly to Mother. Section 36-5-501(a)(2)(A), however, requires more than a mere conclusory finding that wage assignment is not in the best interests of the children. The statute states expressly that there must be proof in the record supporting a written finding of fact that there is good cause not to require an immediate income assignment. The statute specifies further that the trial court must, in its order, "state specifically why such assignment will not be in the child's best interests . . . ." Tenn. Code Ann. §36-5-501(a)(2)(A). The record in this case includes no such proof, nor does the trial court's order state why such an income assignment would not be in the children's best interests. Consequently, the requirements of this exception are not met, and wage assignment is mandated.

The trial court found Maximus in contempt of court after Father received the Administrative Order to Redirect Child Support Payments. Section 71-3-124 of the Tennessee Code Annotated, however, permits Department of Human Services contractors such as Maximus to ". . . initiate any support action in its own name or in the name of the recipient under existing laws of this state," and states that such a contractor may also "initiate support actions . . . in accordance with the provisions of Title IV-D of the Social Security Act, as amended." Tenn. Code Ann. § 7-3-124(a)(4) & (c)(1) (Supp. 2001). Similarly, with regard to the order of income assignment, section 36-5-501 of the Tennessee Code Annotated states that

> . . . when the obligor becomes in arrears . . . [and] the support is paid through the [Central Child Support Receipting Unit] . . . then the . . . contractor in Title IV-D child support cases shall, without the necessity of an affidavit of the obligee, issue an order of income assignment to the employer of the obligor . . . . No court order expressly authorizing an income assignment shall be required under this paragraph.

Tenn. Code Ann. § 36-5-501(b)(1)(B) (2001).[9] Thus, Maximus acted pursuant to Tennessee law when it issued the administrative order to redirect payment to the Child Support Receipting Unit as well as the order of wage assignment.

It should be noted that section 36-5-116(a)(1) states in part:

. . . [a]ll order [sic] in Title IV-D support cases, and all orders for income assignments which have directed support to be paid to the clerk of any court, and which are subject to the provisions of [the Social Security Act], shall be deemed to require that the support be sent to the central collection and disbursement unit, *any order of the court notwithstanding*.

Tenn. Code Ann. § 36-5-116(a)(1) (2001) (emphasis added).

Therefore, the order underlying the finding of contempt (i.e., the order directing Father to make child support payments directly to Mother), was clearly in contravention of Tennessee statutes mandating that such payments be made through wage assignment to the State Child Support Receipting Unit. Without question, Mother was entitled under Tennessee law to seek the assistance of a Title IV-D child support services contractor such as Maximus, and the trial court clearly abused its discretion in finding her in contempt of court for doing so. Likewise, once Mother sought the assistance of Maximus, Maximus was required to take the actions for which it was found in contempt of court, and the trial court abused its discretion in finding Maximus in contempt of court.

Therefore, the trial court's finding of contempt against both Mother and Maximus is reversed. The order requiring the payment of the fine, the administrative fees, the court costs, and Father's attorney's fees is reversed as well. The cause is remanded with directions to the trial court to enter an order providing for payment of the child support obligations through wage assignment, unless every requirement of a statutory exception is fully met, and requiring that such payments be directed to the appropriate State disbursement unit.

The decision of the trial court is reversed and the cause is remanded for further proceedings consistent with this Opinion. Costs are taxed to the appellee, Larry Millard Butler, for which execution may issue, if necessary.

_____
HOLLY KIRBY LILLARD, JUDGE

---

[9] Although Father testified that he was current in his child support payments, his failure to tender his support payments to the Child Support Receipting Unit, as prescribed by law, made him "in arrears" and triggered the administrative orders for wage assignment and income tax refund offset.