# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### May 14, 2002 Session

## STATE OF TENNESSEE v. JOHN W. THOMPKINS, II

**Direct Appeal from the Circuit Court for Williamson County**
**No. I-1199-387    Donald P. Harris, Judge**

---

### No. M2001-02293-CCA-R3-CD - Filed August 29, 2002

---

The defendant pleaded guilty to aggravated assault, evading arrest, vandalism, reckless endangerment, driving on a revoked license (second offense), and unlawful possession of a weapon. The trial court found him to be a dangerous offender deserving of consecutive sentencing and imposed an effective sentence of seven years. On appeal, the defendant contends that consecutive sentencing was inappropriate and excessive in his case. We affirm the trial court's judgments.

**Tenn. R. App. P. 3; Judgments of the Circuit Court are Affirmed.**

JAMES CURWOOD WITT, JR., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOE G. RILEY, JJ., joined.

Rayburn McGowan, Jr., Nashville, Tennessee, for the Appellant, John W. Thompkins, II.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Mary Katharine Harvey, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

There are defining moments in every life, and for John W. Thompkins, II, the defendant, one such time arrived on September 14, 1999. The defendant, who was barely 20 years old that day, was traveling North on Interstate 65 toward Davidson County. At approximately 6:00 p.m., Lieutenant Darrell Cagle of the Williamson County Sheriff's Department signaled to the defendant to pull off the interstate and stop. Lieutenant Cagle was investigating an earlier report of shots fired from the defendant's vehicle; when he spotted the defendant's automobile, Lieutenant Cagle activated his emergency equipment and motioned for the defendant to stop.

What happened next placed into motion a chain of events leading to the defendant's arrest for six offenses. Rather than submit to Lieutenant Cagle's show of authority, the defendant sped away. Lieutenant Cagle pursued the defendant who was driving northbound along the interstate

at speeds between 70 and 95 miles per hour. At one point, Lieutenant Cagle pulled even with the defendant's vehicle and motioned for him to pull off the road. The defendant made an impudent gesture with his middle finger and continued driving. During the chase, the defendant relieved himself of a nine millimeter assault weapon by tossing it out the car window and over a concrete interstate divider. Lieutenant Cagle later learned that the pistol struck a vehicle traveling southbound on Interstate 65.

As the defendant approached the interstate exit for Harding Place Road, he crossed from the far left lane and aimed at the exit ramp. At the end of the ramp, the defendant ran a red light, barely avoided colliding with another car, sped through a construction zone, ran another red light, drove through a residential area at approximately 55 miles per hour, turned right on Nolensville Road, and turned left on Hopewell. As the defendant crested the top of the hill at the intersection of Haywood Lane and Hopewell, his vehicle broke down, and Lieutenant Cagle blocked the front of the defendant's car. Undeterred, the defendant fled on foot.

Other officers arrived at the scene, and several officers were required to subdue and handcuff the defendant. Based on these events, the defendant was indicted for aggravated assault involving a truck driver who reported that the defendant shot at him, Tenn. Code Ann. § 39-13-102(a)(1)(B) (Supp. 2001), Class D evading arrest, *id*. § 39-16-603(b)(1), (3) (1997), Class D vandalism involving the vehicle that was struck by the defendant's weapon, *id*. § 39-14-408 (1997), Class E reckless endangerment, *id*. § 39-13-103(a), (b) (1997), driving on a revoked license (second offense), *id*. § 55-50-504 (1998), and unlawful possession of a weapon, *id*. § 39-17-1307 (1997). A jury trial was scheduled for November 14, 2000. After a jury was selected, the defendant changed his plea. Pursuant to an agreement with the state, the defendant entered a "best interest" guilty plea on Count 1, the aggravated assault charge, and submitted open guilty pleas to the remaining charges set forth in Counts 2 through 7. Sentencing was reserved for the trial court's determination and imposition.[1]

At the sentencing hearing, the defendant testified that the driver of a semi-trailer truck had tried twice to run him off the side of the interstate. The defendant denied pointing or firing his weapon at the truck driver; he agreed, however, that the weapon was in plain view on the front seat where the truck driver could have seen it. He also agreed that he threw the gun out of his car, but he maintained that he did not intend to frighten anyone or to damage another vehicle. As for running from the police, the defendant claimed that he thought the police would physically harm him if he stopped. The defendant stated that he "liked" to carry a gun and that he stayed armed because he was the manager of a market in a "bad neighborhood." The day of his arrest, however, the defendant was not working; he was going to see "someone" in Columbia. He claimed that he took the weapon with him because he did not know the people in Columbia.

---

[1]Prior to his sentencing hearing, the defendant moved to withdraw his guilty pleas, claiming that he had been coerced into pleading guilty. Defendant's counsel of record withdrew from further representation, and new counsel filed an appearance in the case. Ultimately, the defendant withdrew his motion challenging his guilty pleas, and a sentencing hearing was scheduled for September 4, 2001.

When prompted by defense counsel, the defendant indicated that he was willing to work full time, to give up smoking marijuana, and to give up high speed chases and running from the police.

According to certified copies of prior judgments of conviction and the presentence investigation report, the defendant has three convictions for unlawful possession of a weapon. The offense dates were June 1998, March 1999, and April 1999. All offenses involved semi-automatic weapons: a nine millimeter Taurus pistol, a Glock handgun, and a Smith and Wesson handgun. On each occasion, the defendant was required to forfeit the weapon, and after each forfeiture, the defendant would attend a gun show and attempt to purchase another weapon.

The defendant's criminal history also includes two convictions in 1999 for evading arrest, 1998 and 1999 convictions for possession of marijuana, and a juvenile adjudication of delinquency for possession of drugs with intent to resell. At the time of the offenses in this case, the defendant was on probation.

At the conclusion of the sentencing hearing, the trial court sentenced the defendant as follows:

| Count 1 | Aggravated Assault | Four years imprisonment |
|---|---|---|
| Count 2 | Evading Arrest | Three years imprisonment |
| Count 3 | Vandalism (over $1000) | Three years imprisonment |
| Count 4 | Reckless Endangerment | Two years imprisonment |
| Counts 5 & 7 | Driving on Revoked License (second offense) | Eleven months, 29 days at 75% |
| Count 6 | Unlawful Weapon Possession | 30 days imprisonment |

The trial court further ordered Counts 2 through 7 to be served concurrently with each other but consecutively to Count 1, for an effective sentence of seven years.

Aggrieved by the consecutive sentencing, the defendant has appealed. The defendant claims that the trial court declared him to be a "dangerous offender" based on the circumstances of the case and the defendant's prior convictions, and he argues that those grounds are inadequate to sustain consecutive sentencing. Specifically, he directs us to the videotapes of the police pursuit from which he deduces that his conduct was a garden-variety example of evading arrest in a motor vehicle. He disputes the existence of aggravating circumstances, suggesting instead that "during

most of the pursuit, the danger to other drivers [was] minimal with the exception of approximately two or three intersection crossings."

The defendant also emphasizes that all of the charges arose from a single episode precipitated by his encounter with a truck driver. While not denying that he threw the pistol from his car window, the defendant maintains that he did not act maliciously or knowingly; rather, he was "attempting to rid himself of evidence before an anticipated apprehension."

Last, the defendant notes that his prior convictions for evading arrest and weapon possession are misdemeanor convictions, and he points out that before his involvement in these charges, he had no felony convictions. From his record, the defendant argues that the use of consecutive sentencing was both "abusive and excessive."

As we shall explain, the well-settled sentencing guidelines and principles provide abundant support for the trial court's sentencing decisions in this case, and we will not disturb the consecutive sentencing ordered by the trial court.

We apply a familiar standard of review to sentencing appeals. When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. §40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). "The burden of showing that the sentence is improper is upon the appellant." *Id.* In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo.* *Id.* If appellate review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

When a defendant is convicted of one or more offenses, the trial court must determine if the sentences shall be served concurrently or consecutively. Tenn. Code Ann. § 40-35-115 (1997). Consecutive sentencing may be imposed in the discretion of the trial court upon a determination that one or more of the following criteria exist:

> (1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist . . .;

-4-

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor . . .;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b)(1)-(7) (1997). In addition to these criteria, consecutive sentencing is subject to the general sentencing principles providing that the length of a sentence should be "justly deserved in relation to the seriousness of the offense" and "no greater than that deserved for the offense committed." *Id*. §§ 40-35-102(1), -103(2) (1997); *see State v. Imfeld*, 70 S.W.3d 689, 708 (Tenn. 2002). Moreover, in *State v. Wilkerson*, 905 S.W.2d 933, 937-38 (Tenn. 1995), the supreme court articulated two additional requirements for consecutive sentencing under the dangerous offender category; the trial court must find consecutive sentences are reasonably related to the severity of the offenses committed and are necessary to protect the public from further criminal conduct. *See Imfeld*, 70 S.W.3d at 708 (need for the additional *Wilkerson* findings arises in part because "dangerous offender" category "is the most subjective and hardest to apply").

In ordering the defendant's aggravated assault conviction to be served consecutively to his convictions in Counts 2 through 7, the trial court found that the defendant's behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. In so finding, the trial court emphasized the aggravated circumstances of the offenses coupled with the defendant's prior convictions for similar, related offenses. The record in this case forcefully supports these findings and the resulting conclusion that the defendant is a dangerous offender. The trial court reviewed the videotapes of the police pursuit and rejected the defendant's suggestion that his behavior was a relatively tame example of evading arrest. We also have reviewed the videotapes, and we agree with the trial court's assessment.

The trial court made no explicit findings that consecutive sentencing was reasonably related to the severity of the offenses committed or that consecutive sentences were necessary to protect the public from further criminal conduct. Nevertheless, we have no hesitation in concluding that these *Wilkerson* requirements have been satisfied. The defendant's offending conduct indicates his contempt for society's laws, rules, and regulations. He views law enforcement as physically abusive and to be evaded at all costs. Evidently, he has had little difficulty purchasing firearms, and he provided no credible explanation at sentencing why he needed to arm himself that day. Unless physically restrained, the defendant, we believe, will continue to offend, which further increases the odds that he will injure or kill someone with a firearm. We note that less than three months prior

to the instant offenses, the defendant was convicted of evading arrest, unlawful weapons possession, theft, and driving with a suspended license.

The pedestrians and motorists in this state have no means to protect themselves from a person, such as the defendant, who ignores the rules of the road and drives with life-threatening abandon. We agree with the trial court's observation at sentencing that the defendant cannot seem to learn that what he does affects others. Society is in obvious need of protection from the defendant. Furthermore, we are convinced that consecutive sentencing is altogether appropriate and proportionate to the severity of the defendant's offenses. *See State v. Joel Richard Schmeiderer*, No. M1999-02546CCA-R3-CD (Tenn. Crim. App., Nashville, Nov. 9, 2000) (consecutive sentencing affirmed; defendant had no qualms about chasing another car, shooting at the vehicle, trying to shoot a complete stranger, and shooting and killing an individual), *perm. app. denied* (Tenn. 2002).

Accordingly, we affirm the judgments and sentencing of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE